[No. D019564. Fourth Dist., Div. One. Sept. 18, 1995.]

DAVID LLOYD STECKS et al., Plaintiffs and Appellants, v.
CANDACE YOUNG et al., Defendants and Respondents.

**COUNSEL**

Gore, Grosse, Greenman & Lacy and Michael L. Klein for Plaintiffs and Appellants.

Lewis, D'Amato, Brisbois & Bisgaard, Jeffrey B. Barton, Joan M. Danielsen and James E. Friedhofer for Defendants and Respondents.

**OPINION**

**HALLER, J.**—David and Nancy Stecks brought an action for libel per se, slander per se, and intentional infliction of emotional distress against psychologist Candace Young. The action concerned an oral and a written report

Young made to the child protective services regarding the Steckses and others in which she accused these individuals of child abuse and participation in cult activities. The reports were based upon information Young received from her patient, the Steckses' allegedly schizophrenic adult daughter.

Young demurred, contending she was entitled to absolute immunity pursuant to Penal Code[1] section 11172, subdivision (a). The trial court agreed and sustained the demurrer with leave to amend. After the Steckses filed a first amended complaint, Young filed a second demurrer, again asserting absolute immunity. The court sustained the demurrer without leave to amend and then entered judgment in Young's favor.

On appeal, the Steckses maintain the immunity is inapplicable because (1) Young did not harbor a reasonable suspicion of abuse when she submitted the reports, (2) Young reported issues irrelevant to the prevention of child abuse, and (3) Young conveyed her reports in an untimely manner. Following the thoughtful and well-reasoned reported decisions that previously have interpreted the broadly written Child Abuse and Neglect Reporting Act (§ 11164 et seq.), we affirm the judgment. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

FACTS

Because this appeal arises from a dismissal following a demurrer, we look only to the Steckses' first amended complaint for relevant facts. We accept as true all properly pleaded allegations stated in the complaint. (*Phillips* v. *Desert Hospital Dist.* (1989) 49 Cal.3d 699, 702 [263 Cal.Rptr. 119, 780 P.2d 349].) We also accept as true all facts appearing in exhibits attached to the complaint and give such facts precedence over contrary allegations in the complaint. (*Dodd* v. *Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627 [272 Cal.Rptr. 623].)[2]

Young is a licensed marriage, family, and child counselor with a doctorate in clinical psychology. She is a member of the Ritual Abuse Task Force for the San Diego County Commission on Children and Youth. In September 1988, she began treating the Steckses' 29-year-old daughter (hereafter patient), who had been diagnosed as schizophrenic and suffering from multiple personality disorder. While in psychotherapy sessions, patient reported that her mother and father had sexually molested her when she was a child,

---

[1] All statutory references are to the Penal Code.

[2] The Steckses attached the October 16, 1991, letter, which forms the gravamen of their allegations, as an exhibit to the first amended complaint and incorporated it by reference.

practiced satanic worship, abused alcohol and marijuana, and participated in human and animal sacrifice and brainwashing.

During treatment, patient also told Young she was concerned about the welfare and safety of her niece and nephew, particularly her niece, whom she thought might be a victim of sexual molestation by patient's brother-in-law. In April 1990, patient, but not Young, informed child protective services of her concerns. In September 1991, patient informed Young that she had information suggesting her nephew was scheduled to be sacrificed at a cult ritual celebration of the fall equinox. Patient again implicated the children's father in the planned cult ritual.

After patient told Young of the anticipated ritualistic sacrifice, Young spoke directly with Wells Gardner of child protective services. On October 16, 1991, Young, at Gardner's request, sent a letter to Gardner in which she conveyed her concerns regarding the children and why she thought patient should be believed. Before sending the letter, Young had never met or communicated with the Steckses, the children, or the children's parents, relying instead solely upon information patient provided. The letter was seen and read by Gardner, others associated with child protective services, medical practitioners and individuals within the criminal justice system.

The letter, which according to the Steckses does not "suggest" they posed any danger to their grandchildren, included serious accusations about the Steckses' relationship with patient when she was a child, their involvement in cult activities, and Young's assessment that neither of the Steckses would be a proper caretaker for their grandchildren. The Steckses contend the letter and all oral representations concerning them were false and that Young made these statements with "a complete absence of reasonable suspicion" they were true. Further, they allege Young's actions have harmed their good reputations and caused them damages, including mental and physical distress.[3]

## DISCUSSION

For more than 30 years, California has used mandatory reporting obligations as a way to identify and protect child abuse victims. In 1963, the Legislature passed former section 11161.5, its first attempt at imposing upon

---

[3]From the record, it is clear that child protective services conducted some level of investigation concerning the Steckses' grandchildren, but the record is silent as to what form the investigation took. Although the parties do not reference the filing of a dependency petition or any criminal proceedings, the Steckses did inform the trial court at oral argument on January 22, 1993, that "these two children . . . have long since been returned to their parents."

physicians and surgeons the obligation to report suspected child abuse. Although this initial version and later ones carried the risk of criminal sanctions for noncompliance, the state Department of Justice estimated in November 1978 that only about 10 percent of all cases of child abuse were being reported. (*Krikorian* v. *Barry* (1987) 196 Cal.App.3d 1211, 1216-1217 [242 Cal.Rptr. 312].)

■ Faced with this reality and a growing population of abused children, in 1980 the Legislature enacted the Child Abuse Reporting Law (§ 11165 et seq.), a comprehensive scheme of reporting requirements "aimed at increasing the likelihood that child abuse victims are identified." (*James W.* v. *Superior Court* (1993) 17 Cal.App.4th 246, 254 [21 Cal.Rptr.2d 169], citing *Ferraro* v. *Chadwick* (1990) 221 Cal.App.3d 86, 90 [270 Cal.Rptr. 379].) The Legislature subsequently renamed the law the Child Abuse and Neglect Reporting Act (Act) (§ 11164). (Stats. 1987, ch. 1444, § 1.5, p. 5369.)

These statutes, all of which reflect the state's compelling interest in preventing child abuse, are premised on the belief that reporting suspected abuse is fundamental to protecting children. The objective has been to identify victims, bring them to the attention of the authorities, and, where warranted, permit intervention. (*James W.* v. *Superior Court, supra*, 17 Cal.App.4th at pp. 253-254.) Committed to the belief that reporting requirements protect children, the Legislature consistently has increased, not decreased, reporting obligations and has afforded greater, not less, protection to mandated reporters whose reports turn out to be unfounded.

Against this background, we examine the relevant provisions of the Act.

■ Section 11166, subdivision (a) identifies mandated reporters, including health practitioners,[4] and defines the circumstances under which these individuals must report. This provision affirmatively "requires persons in positions where abuse is likely to be detected to report promptly all suspected and known instances of child abuse to authorities for follow-up investigation." (*Ferraro* v. *Chadwick, supra*, 221 Cal.App.3d at p. 90.) Suspected abuse includes circumstances where "it is objectively reasonable for a person to entertain a suspicion, based upon facts that could cause a reasonable person in a like position, drawing when appropriate on his or her training and experience, to suspect child abuse." (§ 11166, subd. (a).) The incident must be reported "as soon as practically possible by telephone," followed by a written report "within 36 hours of receiving the information . . . ." (*Ibid.*) Failure to comply is punishable as a misdemeanor. (§ 11172, subd. (e).)

---

[4]Young, a licensed marriage, family, and child counselor, is a health practitioner within the meaning of section 11165.8.

Section 11167, subdivision (b) authorizes communications with child abuse protective agencies and provides that "[i]nformation relevant to the incident of child abuse may also be given to an investigator from a child protective agency who is investigating the known or suspected case of child abuse."

Section 11172, subdivision (a) establishes immunity. It "cloaks mandated reporters with immunity from civil and criminal liability for making any report 'required or authorized' by the Act." (*Ferraro* v. *Chadwick, supra*, 221 Cal.App.3d at pp. 90-91.)[5] Subdivision (c) of section 11172 entitles mandated reporters who incur legal fees defending a legal action brought despite the immunity, to recover their legal fees from the state Board of Control.

 The Steckses contend that Young's entitlement to immunity depends upon a factual determination of whether she harbored a reasonable suspicion of abuse when she reported to child protective services. While the Steckses concede that as a health practitioner Young must comply with the Act's mandatory reporting provisions, they argue her immunity is not absolute. From their perspective, they have the right to prove up the accusations contained in the first amended complaint because the Act does not protect Young from preparing negligent or knowingly false reports.

 As respondent argues convincingly, however, the Steckses' position is contrary to existing precedent and is inconsistent with the Act's fundamental premise—reporting protects children. It also disregards those factors which eventually led the Legislature to include absolute immunity within the Act: (1) professionals will be reluctant to report if they face liability for inaccurate reports, and (2) it is inconsistent to expose professionals to civil liability for failing to report[6] and then expose them to liability where their reports prove false. As the Legislature recognized, accurate reports of abuse do not lead to civil lawsuits. Only those which cannot be confirmed, are unfounded, or, worse yet, are intentionally false, do. Faced with a choice between absolute immunity, which would promote reporting but preclude redress to those harmed by false accusations, and conditional immunity, which would limit reporting but allow redress, the Legislature, through various amendments, ultimately selected absolute immunity. (*Storch* v. *Silverman* (1986) 186 Cal.App.3d 671, 679-681 [231 Cal.Rptr. 27].)

---

[5]This statute also affords immunity to nonmandated reporters who report known or suspected child abuse, "unless it can be proven that a false report was made and the [nonmandated reporter] knew that the report was false or was made with reckless disregard of the truth or falsity of the report. . . ." (§ 11172, subd. (a).)

[6]See *Landeros* v. *Flood* (1976) 17 Cal.3d 399 [131 Cal.Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324].

■ The appellate courts of this state, including our own court, have previously evaluated the Act's immunity provision and, in each case, soundly rejected the argument that immunity does not attach unless "reasonable suspicion" existed. As succinctly stated by the Court of Appeal in *Storch*, which conducted a comprehensive analysis of (1) the statutory language, (2) the legislative purposes, and (3) the historical background of the statutory immunities:

"Plaintiffs' interpretation, however, renders the immunity statute virtually meaningless. There is no need for immunity when there can be no liability, as in the case of reports that are true or based upon objectively reasonable suspicion. . . . The issue of the reasonableness of the reporter's suspicions would potentially exist in every reported case.

"The legislative scheme is designed to encourage the reporting of child abuse to the greatest extent possible to prevent further abuse. Reporters are required to report child abuse promptly and they are subject to criminal prosecution if they fail to report as required. Accordingly, absolute immunity from liability for all reports is consistent with that scheme." (*Storch* v. *Silverman, supra*, 186 Cal.App.3d at pp. 678-679, fn. omitted; accord, *Krikorian* v. *Barry, supra*, 196 Cal.App.3d at p. 1223; *Thomas* v. *Chadwick* (1990) 224 Cal.App.3d 813, 819-820 [274 Cal.Rptr. 128]; *Ferraro* v. *Chadwick, supra*, 221 Cal.App.3d at pp. 90-92; see also *James W.* v. *Superior Court, supra*, 17 Cal.App.4th 246 [where we declined to apply immunity to the post reporting activities of a psychologist and foster parents, and reaffirmed that mandated reporters are entitled to absolute immunity even if their reports are negligently prepared or intentionally false].)

The Steckses insist cases such as *Storch, Krikorian, Ferraro* and *Thomas* were wrongly decided. We disagree and decline to forge a course inconsistent with the thoughtful reasoning and holdings of these cases.[7]

■ In following precedent, we are also mindful that the Act confers absolute immunity upon a mandated reporter whether the reporter supplies a "required" report (§ 11166, subd. (a)) or an "authorized" one (e.g., § 11167, subd. (b)). (*Ferraro* v. *Chadwick, supra*, 221 Cal.App.3d at p. 94.) As we observed in *Thomas* v. *Chadwick, supra*, 224 Cal.App.3d at p. 822: "It would be anomalous to conclude that the reporter's 'required' report of suspected child abuse is privileged, but that the legislatively contemplated subsequent

---

[7]To the extent the Steckses contend *James W.* v. *Superior Court, supra*, 17 Cal.App.4th 246 casts doubt on the validity of the absolute immunity rule, they read the case too broadly. *James W.* involved activities that were neither required nor authorized under the Act. Our court found only that section 11172 ". . . does not apply to activities that continue more than two years after the initial report of abuse by parties who are not acting as reporters." (17 Cal.App.4th at p. 253.)

communications concerning the incident would expose the reporter to potential civil liability. Such an interpretation would render nugatory the statutory language extending the privilege to 'authorized reports,' and would frustrate the legislative purpose by resurrecting the precise damper on full reporting and cooperation which the legislative scheme was designed to eliminate." Thus, it is of no consequence whether we treat Young's oral communication and written report as "required" or "authorized."

■■■ In a related argument, the Steckses contend immunity is inapplicable because Young's statements about them were irrelevant to the prevention of child abuse. Relying on the portion of their first amended complaint that alleges, "[t]he letter does not suggest that the [grandchildren] were in any danger from their grandparents," the Steckses argue the information concerning them in Young's letter is beyond the scope of immunized conduct.

Preliminarily, we note other contrary allegations belie the Steckses' argument. The October 16, 1991, letter, which appellants attach as an exhibit and incorporate by reference, states, "[t]his letter is in response to your request to provide further information regarding my concerns for the [grandchildren] . . . [and why] I would have grave concerns about the children being placed with either the maternal or paternal grandparents."

Moreover, regardless of whether the information about them in Young's letter was relevant, the Steckses' position that the Act does not immunize irrelevant information undermines, rather than supports, the Act's key premise—namely that reporting protects children. Inevitably, were we to accept their position, we would simply invite protracted litigation concerning a factual determination of which statements were or were not "relevant." Because such an approach would discourage reporting, it is inconsistent with the legislative scheme and the Act's objectives.

Finally, the Steckses maintain that even if Young's reporting activities are protected, Young lost her immunity because her written report was not submitted "within 36 hours of receiving the information concerning the incident."[8] (§ 11166, subd. (a).) ■■■ As noted, section 11166 subdivision (a) creates an affirmative obligation upon designated professionals to report known and suspected child abuse and to do so within specified time frames. The failure to report can subject mandated reporters to both criminal prosecution (§ 11172 subd. (e)) and civil liability. (*Landeros* v. *Flood, supra,* 17 Cal.3d 399.)

---

[8]The Steckses do not allege the date on which Young orally reported to child protective services or how much time transpired between Young receiving the information from patient and talking with Wells Gardner. Likewise, they do not argue that the initial report was untimely.

By contrast, once the report is made, immunity attaches. (§ 11172 subd. (a).) To suggest, as the Steckses do, that untimely reports are not protected, is inconsistent with the language of the statute and legislative objectives. ██ "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] Moreover, 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' [Citation.]" (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) If we were to adopt the Steckses' position, tardy mandated reporters with pertinent information would be reluctant to report out of fear that their actions might lead to litigation—a result at variance with the purposes of the Act. (*Ferraro* v. *Chadwick, supra*, 221 Cal.App.3d at p. 94.)

██ The Steckses' untimeliness argument is similarly unavailing if the October 16, 1991, letter is treated as an "authorized" report (§ 11166, subd. (b)) as opposed to a "required" report (§ 11166, subd. (a)). Unlike "required" reports, "authorized" reports do not reference a time requirement.[9]

Without exception, our appellate courts have concluded that immunity is a key ingredient in maintaining the Act's integrity and thus have rejected efforts aimed at narrowing its protection. While we recognize that unfounded reports can lead to serious, sometimes devastating consequences, and we have great sympathy for those who are wrongfully accused, as we noted in *Thomas* v. *Chadwick, supra*, "[i]n this war on child abuse the Legislature selected absolute immunity as part of its arsenal. This value choice is clearly within the province of the Legislature. We cannot defuse this chosen weapon on the ground that its effect is sometimes ill when its general purpose is good." (*Thomas* v. *Chadwick, supra*, 224 Cal.App.3d at p. 827.)

Having reaffirmed prior holdings affording absolute immunity to those individuals the Act designates as mandated reporters, we express our concern that factually this case presses the outer limits of immunity. Typically, mandated reporters base their reports upon personal interviews with or observations of the alleged victim or abuser or upon information derived from other professionals treating or investigating the alleged abuse. By contrast, here the mandated reporter allegedly trusted the accusations of a purportedly schizophrenic patient, who had no personal knowledge that

[9]The appellants' reliance on *Searcy* v. *Auerback* (9th Cir. 1992) 980 F.2d 609, where a federal appeals court, applying California law, concluded that a clinical psychologist was not entitled to immunity because he failed to comply with conditions specified in the Act, is misplaced. There, unlike here, the report in question was prepared at the request of and given to a father who suspected his child was the victim of sexual molest. The father gave the report to the police, who used it to initiate an investigation against the child's mother.

the children were being abused, and conveyed those accusations to the authorities.

In circumstances where the mandated reporter is not drawing upon personal professional assessments of the victim or abuser or is not relying upon other trained professionals who have made such assessments, we submit that the application of absolute immunity warrants further reflection by the Legislature. Where such reports turn out to be false, the Legislature may deem it appropriate to apply qualified immunity and to permit recovery where the wrongfully accused person can establish that the report was known to be false or made in reckless disregard of the truth. However, absent a change in the statute, the trial court properly sustained the demurrer without leave to amend.

DISPOSITION

Affirmed.

Huffman, Acting P. J., and Nares, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 14, 1995.