[No. B194219. Second Dist., Div. Eight. May 21, 2008.]

GEORGE SANTILLAN et al., Plaintiffs and Appellants, v.
ROMAN CATHOLIC BISHOP OF FRESNO, Defendant and Respondent.

## COUNSEL

Arkin & Glovsky, Sharon J. Arkin; Kiesel, Boucher & Larson, Raymond P. Boucher, Patrick DeBlase, Anthony M. DeMarco; The Drivon Law Firm, Lawrence Drivon and David Drivon for Plaintiffs and Appellants.

Stammer, McKnight, Barnum & Bailey, Carey H. Johnson and Aimee E. Rainwater for Defendant and Respondent.

## OPINION

**RUBIN, J.**—Plaintiffs George and Howard Santillan appeal from the summary judgment entered for defendant Roman Catholic Bishop of Fresno in this action based on allegations of childhood sexual abuse by one of defendant's former clerics. Because triable issues of fact exist concerning whether defendant had the requisite notice that the offending cleric posed a risk of committing such acts (Code Civ. Proc., § 340.1, subds. (b), (c)), we reverse the trial court's determination that the complaint was barred by the statute of limitations.

### FACTS AND PROCEDURAL HISTORY

Brothers George and Howard Santillan allege that from 1959 through 1973, they were the victims of childhood sexual abuse by Monsignor Anthony Herdegen, the resident cleric at their hometown Catholic parish in

Wasco, California.[1] That parish was operated by the predecessor of Roman Catholic Bishop of Fresno, a corporation sole (the Diocese). Appellants sued the Diocese in 2003 under the one-year revival provision for previously time-barred claims against entities such as the Diocese that allegedly failed to protect children from an employee's unlawful sexual conduct when they had notice of such behavior. (Code Civ. Proc., § 340.1, subds. (b), (c).)[2] The Diocese brought a summary judgment motion on the ground that the action did not qualify for the one-year revival period and was therefore barred by the statute of limitations because there was no evidence that the Diocese had notice beforehand of any unlawful sexual conduct by Herdegen.

The evidence was undisputed that appellants never told anyone, even each other, about the abuse until many years later. The first person George told about the abuse was his psychiatrist in 1983. Howard first told his parents about the alleged abuse in 1987. During the years when the abuse occurred, each appellant followed Herdegen's instructions to conceal their activities. The parties agree on appeal, as they did below, that the only possible evidence of notice rested on deposition testimony that Herdegen's part-time parish housekeeper knew or should have known that Herdegen was sexually abusing appellants.

That housekeeper was Barbara Zeilman, who died some years before this action was filed. Zeilman was an elderly woman who came six days a week to clean up Herdegen's living quarters in the parish rectory. She was hired by Herdegen and paid with parish funds, but those funds ultimately belonged to the Diocese. According to appellants, most of the abuse occurred in

---

[1] For ease of identification, we will refer to George and Howard Santillan separately by their first names and collectively as appellants.

[2] Appellants' first amended complaint contained causes of action for negligent hiring, supervision or retention of Herdegen, breach of fiduciary duty, intentional infliction of emotional distress, vicarious liability, and successor liability. The parties agree that despite the names given to appellants' causes of action, each rises or falls on whether appellants raised triable issues of fact that they qualified for the revived limitations period of Code of Civil Procedure section 340.1. All further undesignated section references are to the Code of Civil Procedure. When we mention subdivisions (b) and (c), we are referring to section 340.1.

The action was originally filed in Sonoma County but was later coordinated in Alameda County with the many other such actions brought in Northern California. The complaint is one of many from throughout the state against various entities and individuals affiliated with the Catholic Church for childhood sexual abuse. Those cases have been coordinated in the Los Angeles County Superior Court and the Alameda County Superior Court. The Second District Court of Appeal has been designated as the intermediate appellate court for the coordinated cases. The Bay Area cases, including appellants', are known as *The Clergy Cases III*. (Cal. Rules of Court, rule 1550(c).)

*The Clergy Cases III* include: *James Doe 1 et al. v. The Archbishop of San Francisco et al.* (B192531); *Dutra v. Eagleson* (B183033); and *Piscitelli v. Salesian Society* (B195450).

Herdegen's bedroom. Although that part of the rectory was ordinarily off limits to anyone but Herdegen, Zeilman let appellants in and knew they were often alone with Herdegen behind his closed bedroom door. Appellants' mother claimed that when she first learned of the abuse in 1987, she confronted Zeilman about it. According to the mother, she asked Zeilman, "Why didn't you tell me? Because I know you knew." Instead of denying or otherwise responding to that accusation, however, Zeilman just cried. Mother operated a beauty shop and did Zeilman's hair, even after that initial confrontation. According to the mother, she and Zeilman conversed during those sessions, and even though Zeilman never said that she recalled what had happened, she did say "I'm sorry, I'm sorry, I'm sorry."

Cardinal Roger Mahony served in various high-level administrative positions at the Diocese from 1962 to 1980. At his deposition, Mahony testified that in 1985 and before, a parish priest's practice of taking a child to his bedroom and closing the door "could be grounds for . . . suspicion" of sexual misconduct. Mahony was then asked to assume that Zeilman was aware that unsupervised and unchaperoned children were in Herdegen's bedroom for any length of time. Based on that assumption, Mahony was asked whether he "would . . . have expected the housekeeper to have made some effort to report to a higher level official?" Mahony replied, "Well, if there was [a] well-founded suspicion of some problem, I would expect she would have told somebody."[3]

The trial court concluded that Zeilman's tearful but otherwise silent response to the accusation by appellants' mother that Zeilman knew about the abuse, and her later statements that she was "sorry," raised a triable issue of fact that Zeilman in fact knew what Herdegen had done to appellants. However, because Zeilman was a low-level employee, the court ruled that absent evidence her job duties expressly included reporting her knowledge to Diocese officials, notice to the Diocese could not be inferred. The trial court found that Mahony's ambiguous testimony about his expectation that Zeilman would have reported what she knew "to somebody" did not raise an inference that making such a report was in fact an express part of her job duties. Because there was no evidence that Zeilman had ever reported her presumed suspicions to the Diocese, the trial court found there were no triable issues to show the Diocese was ever on notice beforehand that Heredegen was

---

[3] Although the record on appeal includes far greater factual detail about appellants' allegations, some of it graphic, we have limited our statement of facts to only those necessary to analyze and resolve the notice issue.

committing unlawful sexual conduct. Judgment for the Diocese was later entered, and appellants contend the trial court erred by granting summary judgment.[4]

## STANDARD OF REVIEW

Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (§ 437c, subd. (c).) In reviewing an order granting summary judgment, we must assume the role of the trial court and redetermine the merits of the motion. In doing so, we must strictly scrutinize the moving party's papers. The declarations of the party opposing summary judgment, however, are liberally construed to determine the existence of triable issues of fact. All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. While the appellate court must review a summary judgment motion by the same standards as the trial court, it must independently determine as a matter of law the construction and effect of the facts presented. (*Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562 [42 Cal.Rptr.2d 697].)

A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (§ 437c, subds. (*o*)(2), (p)(2).) If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense. In doing so, the plaintiff cannot rely on the mere allegations or denials of his pleadings, "but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (§ 437c, subd. (p)(2).) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. [Fn. omitted.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

## DISCUSSION

 Section 340.1 requires that actions for childhood sexual abuse against a nonperpetrator who was a legal cause of the abuse (e.g., an employer of the

---

[4] Before judgment was entered, appellants brought, but lost, a new trial motion. Although appellants mention the new trial motion in their appellate brief's statement of facts, they have made no arguments concerning the denial of that motion. We therefore deem that issue waived. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 [46 Cal.Rptr.2d 119].)

abuser) be brought before the victim's 26th birthday unless the defendant "knew or had reason to know, or was otherwise on notice, of any unlawful sexual conduct by an employee, volunteer, representative, or agent, and failed to take reasonable steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct in the future by that person . . . ." (§ 340.1, subd. (b)(2).)[5] Any such claims that were previously time-barred were revived for a one-year period during the year 2003. (§ 340.1, subd. (c).) As noted, the only issue on appeal is whether appellants qualified under the 2003 revival provision on the theory they had raised triable issues of fact that the Diocese was on notice of Herdegen's unlawful sexual conduct as required by subdivision (b)(2).

In *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531 [67 Cal.Rptr.3d 330, 169 P.3d 559] (*Doe*), the Supreme Court explained that subdivision (b)(2) can be satisfied by at least two types of notice—actual or constructive. The plaintiffs in *Doe* sued the City of Los Angeles after their 26th birthdays, claiming they had been sexually abused by a Los Angeles police officer while they took part in the Boy Scouts of America's Police Explorer program.[6] The trial court sustained without leave to amend defendant's demurrers to the complaint on the ground that plaintiffs failed to plead facts showing the requisite notice under subdivision (b)(2), rulings that were affirmed by both the Court of Appeal and the *Doe* court. According to the *Doe* court, when subdivision (b)(2) mentions that a defendant "knew" about the perpetrator's past unlawful sexual conduct, the Legislature was referring to actual knowledge, while the phrase "had reason to know" refers to constructive knowledge. (See *Doe*, at pp. 546, 549.) Constructive notice under subdivision (b)(2) requires proof that the defendant was in possession of certain facts from which a person of average intelligence, or of the defendant's superior intelligence, would have inferred the existence of the ultimate fact at issue or regarded its existence as so highly probable that he would have acted as if it did exist. (*Doe*, at p. 547.)

■ This case calls into play another species of notice, however: where an agent's knowledge of certain facts is imputed to the principal for purposes of establishing the principal's notice of those facts. Civil Code section 2332 provides that, "[a]s against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." So long as the agent was under a duty to disclose certain information, the

---

[5] At the time suit was brought appellants were over 26 years of age.

[6] The *Doe* court declined to reach the issue whether the complaints were timely under the 2003 revival provision of subdivision (c), but made clear that the failure to satisfy the notice requirements of subdivision (b)(2) was fatal to any attempt to qualify their actions under subdivision (c). (*Doe, supra*, 42 Cal.4th at p. 543, fn. 3.)

principal is bound by the agent's knowledge of that information whether or not the agent communicated it to the principal. (*Sands v. Eagle Oil & Refining Co.* (1948) 83 Cal.App.2d 312, 319 [188 P.2d 782]; *Shapiro v. Equitable Life Assur. Soc.* (1946) 76 Cal.App.2d 75, 86–87 [172 P.2d 725].) For this purpose, there is no difference between constructive and actual notice. (*Shapiro, supra,* at p. 87.)[7] The rule applies to employees, who are agents of their employer. (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 669 [254 Cal.Rptr. 211, 765 P.2d 373].)[8] It has also been used to determine that an agent's knowledge of certain facts will be imputed to a principal when determining when a statute of limitations begins to run. (*Display Research Laboratories v. Telegen Corp.* (N.D.Cal. 2001) 133 F.Supp.2d 1170, 1176–1177 [applying Civ. Code, § 2332, held that corporate plaintiff's state law misappropriation of trade secrets claim was not barred by the statute of limitations because corporate agent's knowledge of *plan* to misappropriate was not sufficient notice where limitations period begins to run upon notice of an *actual* misappropriation]; *Capron v. State of California* (1966) 247 Cal.App.2d 212, 231–232 [55 Cal.Rptr. 330] [plaintiffs' action for fraudulently induced settlement of eminent domain dispute was barred by limitations period because plaintiffs' agent discovered the alleged fraud years before the fraud action was filed, knowledge that was imputed to plaintiffs].)

■ These principles require us to conduct the following two-step inquiry—whether triable issues of fact exist that Zeilman knew Herdegen was sexually abusing appellants at the time and, if so, whether her agency with the Diocese imposed a duty to report that knowledge to the Diocese. We agree with the trial court that triable issues of fact were raised concerning Zeilman's contemporaneous knowledge of the alleged abuse. According to appellants, Zeilman knew that they were often alone with Herdegen in his bedroom while the door was shut, conduct that Mahony testified could be grounds for suspecting sexual misconduct. Years later, when appellants' mother accused Zeilman of having known about the abuse, Zeilman did not deny the charge and simply cried in response. When Zeilman spoke with the mother after that confrontation, she said she was sorry. While not a clear

---

[7] Appellants contend that the presence of "otherwise on notice" within subdivision (b)(2) establishes a form of notice that is different from and lesser than either actual or constructive notice. Under their interpretation, Zeilman's knowledge of the abuse should be imputed to the Diocese even if she had not been under an employment duty to report that information. The *Doe* court rejected a similar contention and made clear its belief that " 'otherwise on notice' " did not establish a lesser form of notice. (*Doe, supra,* 42 Cal.4th at p. 548.) Because we conclude that triable issues of fact exist as to whether the Diocese is bound by Zeilman's knowledge of the alleged abuse, and because there is no difference between actual or constructive notice based on such imputed knowledge, we need not reach that issue.

[8] The Diocese does not contend that Zeilman was not one of its employees. In fact, the Diocese argues that Zeilman's alleged knowledge of the abuse cannot be imputed to it because Zeilman was no more than a low-level employee.

admission of knowledge, Zeilman's conduct and statements do raise an inference that she in fact knew about the alleged abuse while it was ongoing.

The evidence concerning whether Zeilman's employment included a duty to report such misconduct is not so clear. The only such evidence came from Mahony, who testified that he would have expected Zeilman to tell "somebody" if she had any well-founded suspicions of sexual misconduct. This testimony does not expressly identify Zeilman's job duties. For instance, Mahony's "expectation" could be something far different from and far less than an express duty of Zeilman's employment, and his belief that she would report her knowledge to "somebody" does not necessarily mean officials of the Diocese. We therefore agree with the trial court that Mahony's testimony was ambiguous. However, we disagree that the ambiguities justified summary judgment. In fact, as appellants point out, evidentiary doubts or ambiguities are ordinarily resolved in favor of the party opposing summary judgment. (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159 [49 Cal.Rptr.3d 153].) Mahony was asked whether he would have expected Zeilman to report any suspicions to a "higher level official." Seen in that light, his response that he would have expected her to tell "somebody" could be taken as a reference to somebody who was a higher level official of the Diocese. As for his expectation that Zeilman would report any suspicions of sexual abuse to such a person, it is important to note that Mahony held various high level positions at the Diocese while much of the alleged abuse occurred. Viewed in that light, an inference could be drawn that his expectation was based on his knowledge of the duties of parish employees such as Zeilman.[9] We therefore hold that the trial court erred by granting summary judgment for the Diocese.[10]

---

[9] We believe this evidence also points to another inference—that Mahony's expectation suggests the housekeeper actually did report her suspicions. However, appellants have not raised that issue and therefore we will not reach it.

[10] The Diocese argues in its appellate brief that section 340.1 as applied in this case violates its constitutional due process rights by reviving a claim based on statements attributed to a long-dead witness—Zeilman. It therefore "objects" in its brief to the use of deposition testimony from appellants and their mother concerning Zeilman's purported knowledge of the abuse and asks that we affirm the summary judgment on this ground. We first reject its argument because it never objected below to the deposition testimony and has therefore waived its evidentiary objections. (§ 437c, subd. (b)(5).) We also reject its contention because it never raised the constitutional issue below. Although, as the Diocese points out, we have discretion to consider constitutional issues that are raised for the first time on appeal, in civil actions that rule applies where the facts are undisputed, important public policy questions are raised, penal statutes are involved, or error affects the validity of a judgment. (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512].) The last two do not apply because a penal statute is not involved and because as a result of our holding there will be no judgment, invalid or otherwise. As for the remaining two grounds, the factual issues are clearly in dispute, which is why we are reversing the summary judgment in the first place. Finally, the Diocese challenges section 340.1 as applied to it in this case. While a facial challenge to a statute's

## DISPOSITION

For the reasons set forth above, the judgment is reversed. Appellants shall recover their costs on appeal.

Flier, J., concurred.

**COOPER, P. J.,** Dissenting.—I respectfully dissent. The majority states and I agree that the ultimate "issue on appeal is whether appellants qualified under the 2003 revival provision on the theory they had raised triable issues of fact that the Diocese was on notice of Herdegen's unlawful sexual conduct as required by [Code of Civil Procedure section 340.1,] subdivision (b)(2)." (Maj. opn., *ante*, at p. 10.) The parties agreed that "the only possible evidence of notice rested on deposition testimony that Herdegen's part-time parish housekeeper knew or should have known that Herdegen was sexually abusing appellants." (Maj. opn., *ante*, at p. 7.) The majority concludes that the trial judge erred in granting the summary judgment motion because, under an agency theory, if the agent (Zeilman) was under a duty to disclose certain information, the principal (the Diocese) is bound by the agent's knowledge of that information whether or not the agent communicated it to the principal. (Civ. Code, § 2332.) I dissent because I do not believe the evidence raises a triable issue of fact on the notice requirement.

Appellant strives to establish the notice element first via proof that the part-time housekeeper either suspected Herdegen of sexual abuse or had knowledge of alleged abuse and had a duty to pass that information on to her employer, the Diocese. Although the evidence is relatively weak and circumstantial, I agree there are triable issues of fact about Zeilman's contemporaneous knowledge of the alleged abuse. The evidence of her behavior, when confronted with questions about her knowledge, is sufficient to raise this issue.

However, there is not sufficient evidence to raise a triable issue of fact that Zeilman had a duty to pass on her knowledge or suspicions to the Diocese. The majority opinion identifies the evidence suggesting that Zeilman's employment included a duty to report such misconduct as testimony from Cardinal Mahony that "he would have expected Zeilman to tell 'somebody' if she had any well-founded suspicions of sexual misconduct." (Maj. opn., *ante*, at p. 12.) The majority agrees with the trial court's conclusion that this

---

constitutionality considers only the text of the measure itself, an "as-applied" challenge considers the facts and circumstances applicable to an individual party only. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) Therefore, the issues raised by its constitutional challenge are limited and do not raise broader public policy questions.

evidence was ambiguous. Nevertheless, because "Mahony held various high level positions at the Diocese while much of the alleged abuse occurred," the majority concludes that "an inference could be drawn that his expectation was based on his knowledge of the duties of parish employees such as Zeilman." (*Ibid.*)

I do not agree with this evaluation of the evidence. Mahony's testimony is neither sufficient to support such an inference, nor is it ambiguous enough to create a triable issue of fact about the existence of such a duty. Mahony's testimony that he would have "expected" Zeilman to report suspect behavior does not support an inference that she had a duty as a Diocese employee to make such a report. Mahony's personal expectation is irrelevant unless it arose from his knowledge of the employee's actual duty to report the abuse. There is no direct evidence, disputed or otherwise, of the existence of such a duty. During his deposition, Mahony could have easily been asked directly, "does Zeilman (or any similarly situated employee) have a duty, as a condition of their employment, to report incidents of suspected or known child sexual or physical abuse." The referenced testimony by Mahony is the only evidence even marginally suggestive of notice identified in this case. It is inadequate to raise a triable issue of material fact regarding the knowledge of the Diocese.

In order to reach the agent/principal notice conclusion suggested by the majority, a complicated multistep analysis is required. We begin with the evidence regarding the housekeeper's behavior when asked about the suspected abuse. Next, we infer from her reaction that she had actual knowledge or a suspicion of abuse. Then we have evidence from Mahony that he would "expect" Zeilman to report any suspicions. Mahony's testimony is then offered to support the indispensable inference that his expectation was based his knowledge of the employee's actual duty to report such activity. This inferential analysis is the only method offered to identify a triable issue of fact whether the Diocese had notice. Although I would hope that in our society any person of good conscience would report suspicions of child abuse, I do not believe that the evidence available in this case is adequate to support an inference that such reporting occurred.

Regarding the reasonableness of the inferences which are critical to the majority position, it is noteworthy that in 1963, the State of California found it necessary to enact penal provisions mandating the reporting of child abuse.[1] Contemporaneous records indicate that it was the reluctance of physicians to report child abuse, despite strong circumstantial evidence of abuse, that was the impetus for the legislation to establish mandated reporting

---

[1] Penal Code section 11166 imposed criminal sanctions for noncompliance on physicians and surgeons.

laws.[2] However, even given the risk of sanctions, the California Department of Justice estimated in November 1978 that only about 10 percent of all cases of child abuse were being reported. (*Krikorian v. Barry* (1987) 196 Cal.App.3d 1211, 1216–1217 [242 Cal.Rptr. 312]; *Stecks v. Young* (1995) 38 Cal.App.4th 365 [45 Cal.Rptr.2d 475].) Even though these initial reporting requirements were in place, in 1980 the California Legislature was compelled to enact the Child Abuse Reporting Law (Pen. Code, § 11165 et seq.), "a comprehensive scheme of reporting requirements 'aimed at increasing the likelihood that child abuse victims are identified.' " (*Stecks*, at p. 371.) Subsequently, the Legislature renamed the law the Child Abuse and Neglect Reporting Act. (Pen. Code, § 11164.) (Stats. 1987, ch. 1444, § 1.5, p. 5369.) "These statutes, all of which reflect the state's compelling interest in preventing child abuse, are premised on the belief that reporting suspected abuse is fundamental to protecting children." (*Stecks*, at p. 371.)

Given the fact that the State of California found it necessary to impose criminal sanctions for failure to report suspected abuse by professionals in fields where the moral imperative to protect children was already extant within the obligations of the profession, I find it difficult to rely on the slender thread of Mahony's "expectation" that a part-time housekeeper would report suspected abuse to provide the factual foundation to proceed with this litigation.

Respondent's petition for review by the Supreme Court was denied August 13, 2008, S164554. Baxter, J., was of the opinion that the petition should be granted.

---

[2] Kalichman, Mandated Reporting of Suspected Child Abuse: Ethics, Law, & Policy (2d ed. 1999) page 14.