Filed 5/28/13  Nava v. Global Fabricators CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SILVINO NAVA, JR., | B238499 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC082804) |
| v. | |
| GLOBAL FABRICATORS, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James A. Kaddo, Judge.  Affirmed.

Michael F. Armstrong for Plaintiff and Appellant.

Rosen & Saba, James R. Rosen and Elizabeth L. Bradley for Defendant and Respondent.

_____

Plaintiff Silvino Nava, Jr., appeals from the judgment entered after the trial court granted summary judgment in favor of defendant Global Fabricators (Global) in this action for negligence.  Nava contends the trial court erred in concluding there were no triable issues of material fact as to duty and causation.  We affirm.

## ALLEGATIONS OF NAVA'S COMPLAINT AGAINST GLOBAL

Global was in the business of repairing, servicing, and inspecting equipment.  On August 9, 2006, Nava was driving a piece of equipment known as a workover rig, used for drilling and repairing oil wells.  The brakes on the rig failed as Nava drove the rig down a steep grade.  Unable to stop the rig, Nava was forced to jump, resulting in severe injuries.  Global had negligently performed repair and inspection work on the brakes of the rig, resulting in injury to Nava.[1]

**Global's Motion for Summary Judgment and/or Summary Adjudication**

Global's motion for summary judgment raised two issues:  (1)  Global had not been negligent; and (2)  there was no credible evidence that Global caused Nava's injuries.  Global reasoned that because it had never been hired to inspect the pneumatic braking system or replace the hoses or fittings, it owed no duty to Key Energy or Nava regarding the failed hose.  In addition, Global did not cause Nava's injuries, because Global did not install the noncompliant hoses or fittings on the rig.  Key Energy installed the wrong hose or fitting, as reflected in its own investigative report.  In support of its motion, Global presented the following undisputed facts.

Excerpts of deposition testimony from Nava established that he was employed by Key Energy as a rig operator at the time of the accident.  He was injured when he was

---

[1]     Fleet Pride, Inc., alleged to be the manufacturer of the work-over rig, was also named as a defendant in the action.  Fleet Pride is not a party to this appeal.

unable to bring the rig to a halt after hearing air escaping from the brakes. When Nava applied the brakes, he heard the sound of air swishing or spurting. He knew something was wrong, because when he pushed the brake pedal all the way down, nothing happened. He applied the backup braking system, but it had no effect.

Nava testified to his belief that Global had last worked on the rig's brakes around 2004. He based that belief on the fact that there was a problem with the brakes at that time which resulted in Key Energy calling out a qualified person, and every time Key Energy called somebody out, it was always Global. At that time, the brake pedal was wobbly and the bottom floor of the rig was rotten and needed to be replaced. Nava testified, "I don't know who did it, but I know that it's somebody qualified for welding." He believed Global had fixed the brakes because the rig was picked up from Global in November 2003. He did not know who worked on the brakes, but the rig was at Global's yard. Nava thought Global had worked on the brakes because Global does most of the work and has the qualifications for that type of work.

An initial safety report was prepared by Key Energy on August 21, 2006. In the section entitled "Behavior of Employee," there is an entry of "Procedures not Followed." Under the heading of "Other," there is an entry of "Equipment failure."

Nava testified that a "Root Cause Analysis" to determine the cause of the accident was performed by Key Energy, working backward from the time of the accident, trying to pinpoint its cause. Nava signed the Root Cause Analysis which indicated the accident was caused by a line that did not comply with Department of Transportation specifications. The accident was discussed in a group meeting involving the crew and safety manager. Everyone at the meeting signed the document. The Root Cause Analysis was handwritten by Cruz Armendariz. The Root Cause Analysis did not indicate who or what company was responsible for the problem.

Global relied on the declaration of Bill Chaney, vice-president of engineering and marketing for Global and designated quality systems management representative. Chaney declared that it was Global's practice since 2001 to document all inspections, manufacturing, and repair services performed on equipment, including work on the rig

operated by Nava at the time of the accident. Chaney reviewed all of Global's records on the rig and a photograph of its pneumatic braking system taken by Key Energy shortly after the accident. The photograph clearly shows push-on hoses and fittings on the pneumatic braking system. The photograph shows one loose push-on hose, which would cause a loss of braking power. Global does not stock or use the brand of hoses and fittings shown in the photograph and has not done so since 2002. Push-on hoses are not approved by the Department of Transportation on pneumatic braking systems, and Global's policy and practice is to only use approved hoses stamped as "DOT Approved."

Chaney declared that Global had been hired by Key Energy on five occasions to work on the subject rig. In October 2003, Global performed a Level D-1 inspection of the rig, but was neither requested nor expected to inspect the area of the noncompliant hoses and fittings. In November 2003, Global conducted a series of specific repairs on the rig, not involving the pneumatic braking system. Key Energy never requested Global to inspect the pneumatic braking system of the rig.

Also in November 2003, Global performed discrete repairs on the "sub base" of the subject rig. At no point during those repairs did Key Energy request Global to inspect or repair the pneumatic braking system. In June 2004, Global performed a "repower" service on the rig, installing a new engine, transmission, cooling system, and remote oil filter system. No additional repairs were requested by Key Energy, including any involving the pneumatic braking system. On July 30, 2005, Global conducted a Level D–1inspection of the subject rig. Global was not requested, nor expected to inspect the area where the noncompliant push-on hoses and fittings were installed. This was Global's last work on the rig prior to the accident in August 2006.

Based on Chaney's review of all of Global's maintenance records for the subject rig, Global never serviced, repaired, or replaced hoses in the area causing the brakes to fail. There is no record of Global ever installing or replacing any hose on the pneumatic braking system of the rig which was not in accordance with Department of Transportation specifications.

4

Global presented excerpts of the deposition of Steven Wright, Key Energy's person most knowledgeable, in this matter. Wright identified a pneumatic line which is part of the braking system. If the line becomes detached, the braking system loses air pressure and the brakes do not work. Wright did not know who put the push-on line on the subject rig. Wright was unaware of any work done by Global on the rig that was not documented in the file for the rig. An inspection would not necessarily cause Global to look at the area of the push-on line unless there was a specific reason to do so, such as the sound of air leaking from that area. A Level D-1 inspection is done on elevators and lift equipment, which are tools used to pull pipe and rods. A Level D-2 inspection is done on hoist and derrick mechanisms and it also involves a general inspection of the main cab and related mechanisms that are used to drive the rig. A Level D–2 inspection looks at the brake pads "as opposed to looking at the lines."

**Nava's Opposition to Summary Judgment/Summary Adjudication**

Nava opposed summary judgment on the basis that Global performed both maintenance and inspection work on the workover rig involved in the accident. In October or November 2003, Global inspected the rig and issued a quotation for proposed work. Nava contended that Global was charged with maintenance of the rig and service of the brakes, and Global installed the push-on hose in the braking system. Even if Key Energy's mechanics installed the push-on hose, Global was still responsible for inspection and maintenance of the rig, including a duty to inspect the pneumatic braking system, note any deficiencies, and correct the problems.

Nava submitted portions of the deposition testimony of Levone Hunter. Hunter identified a brake inspection report dated October 3, 2006, prepared by Dennis Bossaert, who had been equipment manager of Key Energy. Bossaert would "order parts and stuff for the rigs" and was "over the mechanics and stuff." Hunter testified if the hose becomes detached, the rig loses braking pressure. The Root Cause Analysis report is wrong to the extent it states the "company mechanics" installed the wrong type of hose.

Hunter saw Global do brake repairs on the rig in December 2003. Two brake pods were leaking and had to be changed. They were called a rotor chamber at the time. The brake valve was also changed. The brake valve has a "reusable hose and push-on hoses." He recalled the valve being replaced, but not the hoses. To the best of his recollection, the hoses were not replaced.

Nava cited to a portion of the deposition of Armendariz. It was a topic of discussion at the Root Cause Analysis that Global had put on the hose fittings. He did not recall who said it, but it was discussed. The final box of the form indicates the cause of the accident was "the company mechanics" rather than Global's mechanics. The company being discussed was Global.

Nava also submitted portions of his own deposition. He saw documentation that Global had done some work on the brakes at some time before the accident. A quotation form from Global for repairs on the rig, dated October 24, 2003, makes reference to three repairs to the brakes: "Repair brake water nozzles for the sand reel and main drum"; "Tighten loose blots on main drum brake blocks and free up frozen rollers"; and "Free up sand line brake linkage, replace missing brake handle, and free frozen drum brake linkage." Under "Miscellaneous," the quotation recommended: "Secure the brake system quick release valve" and "Repair rear brake air lines." Finally, under a section entitled "Repair Brakes on Rig," the quotation indicated, "Furnish 4 maxi cans, 4 front brake diaphragms, rebuilt relay valve, quick release valve diaphragms, and install two of the maxi cans, two front diaphragms, quick release valve and relay valve. Rest of materials shipped with the rig per Key's instruction."

Nava filed a declaration in opposition to summary judgment. His declaration states Global performed periodic inspections on the rig, issuing a quotation for repairs in October or November 2003, covering brake work. He understands the brakes failed due to the push-on hoses and it is his contention Global placed the hose on the rig. Global has not established that Key Energy placed the hoses on the rig, but even if so, Global was hired to inspect the rig in 2003 and again in 2005. Global should have discovered the push-on hoses and either corrected the situation or called it to Key's attention.

6

**Global's Reply to the Opposition**

Global argued that Nava failed to present specific evidence showing a disputed material fact. Nava conceded the hose caused the accident, but Global's records show that it never serviced or replaced the hoses, it does not stock or use those hoses, and Global did not install the hoses on the rig. As to duty, Global asserted Nava presented no evidence that Global was ever requested or required to inspect the area of the rig where the noncomplaint hoses were installed. Key Energy generated the Level D inspection sheets, dictating the extent of the inspections. Inspection of the pneumatic braking system was never part of the inspection process. According to a supplemental declaration prepared by Chaney, road inspections by Global on this rig were always conducted at ground level, not in the area of the pneumatic braking system.

Nava's declaration is based only on speculation and the assumption that Global had been called out to do work, in contrast to his deposition testimony that he had no evidence to support that conclusion. Hunter was not personally involved in the 2003 brake repairs, he could not verify that Global ever installed the push-on hoses, he does not recall those hoses being replaced by Global, and evidence of repairs would be found in Key Energy's maintenance documents.

Armendariz's deposition testimony was based on his personal belief, and he could not identify the source of information that Global installed the hoses. He did not review records of repair or interview mechanics from Key Energy or Global.

Global submitted a supplemental declaration of Chaney in response to the opposition to summary judgment. Chaney declared that Hunter's statement that Global was the last party to work on the rig in the area of the pneumatic brakes is not supported by Global's maintenance records. The records referenced by Hunter show that Global never accessed, repaired, or inspected the subject area of the rig where the noncompliant push-on hoses were located. Instead, the records indicate the referenced repairs were done at or near the location of the wheels on the rig, well away from the valve and hose connections that caused the accident. The October 2003 inspection of the rig involved

7

only an inspection and maintenance adjustment of the brake shoes and drums at each wheel. The inspection did not include evaluation of any other element of the brake system of the rig. Shortly thereafter in 2005, when Global conducted a series of general repairs to the rig, non-functional components in the rig's braking system were detected and reported to Key Energy. Those repairs were performed at the wheel level, nowhere near the area of the improper valves and hoses. The checklist of Key Energy's Level-D inspection did not call for inspection of the pneumatic braking system. Global's road inspection of the rig's wheel brakes were always conducted from the exterior of the rig at ground level and not in the area at issue in this case.

Global also submitted additional deposition testimony of Hunter to show that if repairs had been made to the rig, they would be reflected in the rig maintenance folder. Armendariz's deposition testimony reflected that he did not recall who said Global installed the defective hoses, he did not talk to any of the mechanics, and he did not look at maintenance records.

**Nava's Objections to Global's Introduction of Additional Evidence in Opposition to Summary Judgment**

Citing *San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A.* (2002) 102 Cal.App.4th 308, Nava objected to Global's submission of additional evidence in its reply to the opposition to summary judgment.

**Ruling of the Trial Court**

The trial court granted summary judgment on the basis that there was no evidence Global had installed, repaired, maintained, or inspected the noncompliant push-on hose. The brake inspection performed three years before the accident was at ground level and did not include inspection of the pneumatic braking system according to the declaration

8

of Chaney. In addition, the Level-D inspection did not include the location of the noncompliant push-on hoses. All evidentiary objections were overruled.

## DISCUSSION

Nava contends there are triable issues of material fact regarding whether Global (1) properly maintained the pneumatic braking system on the rig, and (2) failed to properly inspect the pneumatic braking system. Nava's theories are that Global installed the noncompliant push-on hose that failed, or it inspected the rig and failed to either disclose or correct the defect. Because the trial court abandoned its tentative decision to deny summary judgment, Nava argues this is a "close case" which should be resolved in favor of the party opposing summary judgment. Nava contends the trial court erred in considering additional evidence offered by Global in its reply to the opposition to summary judgment.

### I. Standard of Review

"Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) In reviewing an order granting summary judgment, we must assume the role of the trial court and redetermine the merits of the motion. As such, we will strictly scrutinize the moving party's papers, but the declarations of the party opposing summary judgment will be liberally construed to determine the existence of triable issues of fact. All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. Although we must review a summary judgment motion by the same standards as the trial court, we must independently determine as a matter of law the construction and effect of the facts presented. (*Santillan v. Roman Catholic Bishop of Fresno* (2008) 163 Cal.App.4th 4, 9.)

"A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (*o*)(2) & (p)(2).) If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense. In doing so, the plaintiff cannot rely on the mere allegations in his pleadings, 'but, instead, shall set forth the specific facts showing that a triable issue of material fact exists. . . .' (*Id.,* subd. (p)(2).) A triable issue of material fact exists only if the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. (*Santillan v. Roman Catholic Bishop of Fresno, supra,* 163 Cal.App.4th at p. 9.)" (*Dominguez v. Washington Mutual Bank* (2008) 168 Cal.App.4th 714, 719-720.)

"The moving party generally may *not* rely on additional evidence filed with the reply papers. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A.*[, *supra,*] 102 Cal.App.4th [at p.] 316.)" (Weil & Brown et al., Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) § 10:222 at p. 10-91.) Consideration of new evidence submitted with the reply papers, over objection, may violate the opposing parity's due process right to be informed of the issues it must meet to overcome the summary judgment motion. (*Id.* at § 10.222.2, p. 10-91.)

## II. Analysis

### A. *The Trial Court Should Not Have Overruled the Objection to Chaney's Supplemental Declaration*

Global submitted a supplemental declaration from Chaney in connection with its reply to the opposition to summary judgment. In that declaration, Chaney specifies that the area of the pneumatic braking system is distinct from the location of the brakes, which Global had serviced. Nava's objection to Chaney's supplemental declaration

should have been sustained—Global, as moving party, was not entitled to present new evidence in the reply, without leave of court, and without an opportunity for Nava to respond.[2] (*San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A.*, *supra*, 102 Cal.App.4th at p. 316.) Accordingly, in conducting our de novo review of the merits of the ruling on summary judgment, we shall not consider Chaney's supplemental declaration.

## B. *Global's Initial Showing was Sufficient to Shift the Burden to Nava*

Global presented sufficient facts to demonstrate that summary judgment was appropriate, shifting the burden to Nava to show the existence of a dispute issue of material fact. Global established through multiple sources—including Nava's deposition testimony, Key Energy's records, and the declaration of William Chaney— that the accident resulted from air escaping from the pneumatic braking system. Thus, the issue framed is whether Global was negligent in either installing the hose or inspecting the rig, such that it was liable to Nava for his injuries resulting from the accident.

"'The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury. [Citation.]' (*Mendoza v. City of Los Angeles* (1998) 66 Cal.App.4th 1333, 1339.) 'The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide. [Citation.] However, the elements of breach of that duty and causation are ordinarily questions of fact for the jury's determination. [Citation.]' (*Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 278.) Nevertheless, causation may be a question of law if on undisputed facts there can be no reasonable difference of opinion on causal nexus.

---

[2] As noted, the trial court overruled all evidentiary objections in its written order granting summary judgment.

(*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1687.)" (*Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1139.)

In response to Nava's claim of negligence based on the theory Global installed the noncompliant hose, Global satisfied its initial burden on summary judgment by demonstrating that Nava could not prove one or more elements of the cause of action—in this instance, that Global had anything to do with installation of the offending hose. Global produced evidence that its practice was to only use hoses approved by the Department of Transportation. No documentation from either Global or Key Energy reflected that Global installed the noncompliant hose on the rig driven by Nava.

Global presented deposition testimony of Nava, who had no personal knowledge that Global had worked on the pneumatic braking system, although he speculated that was the case. Chaney's declaration established that Global had not serviced, nor been hired to inspect, the pneumatic braking system in the five times it worked on the rig. Chaney declared that Global's records showed it had never inspected, serviced, or repaired the pneumatic braking system. Global does not use the noncomplaint push-on hoses, and its practice is to only use hoses stamped "DOT Approved."

In addition, Global relied on Wright's deposition testimony. Wright, Key Energy's person most knowledgeable, testified he did not know who installed the push-on hose that caused the accident. He was unaware of any work done by Global that was not documented in paperwork on the rig. An inspection request would not necessarily cause Global to examine the area of the pneumatic braking system, absent a specific reason to do so, such as the sound of air leaking.

Based on this evidence, Global satisfied its initial burden of showing that Nava could not prove causation. Global satisfactorily established its position that it had not installed the noncompliant hose.

Global also satisfied its initial burden on Nava's claim that Global was negligent in inspecting the pneumatic braking system either by failing to detect the noncompliant hose or in failing to recommend replacement. Global's evidence established it had never been called upon to inspect the pneumatic braking system, and there was no evidence it

12

had, in fact, inspected that discrete portion of the rig.  No records from Global or Key Energy on the rig showed that Global worked on, or inspected, the pneumatic braking system.  Thus, Global's evidence showed it was not negligent in conducting an inspection it was never required to make of the failed pneumatic braking system.

Nava cites *Hasson v. Ford Motor Co.* (1977) 19 Cal.3d 530 for the proposition that an automobile repair shop is liable for damages resulting from the failure to use reasonable care in inspecting and servicing a vehicle.  No doubt this is a correct statement of law.  It does not follow, however, that a repair shop is responsible for a defect in a vehicle after performing service unrelated to that defect.  In short, performing specific maintenance and service on a complicated piece of machinery pursuant to a particular repair order does not turn the repair shop into a guarantor against unrelated mechanical failures.

### C.  *Nava's Response Did Not Establish the Existence of a Contested Material Fact*

Having concluded that the burden shifted to Nava, we examine his evidence to determine the existence of a contested material fact.  We find none.

While Nava established that Global worked on the rig five times since 2003, Nava presented no evidence, other than speculation, that Global either installed the push-on hose or failed to properly inspect the pneumatic braking system.  Hunter, upon whom Nava places primary reliance, testified that Global worked on the brakes.  Global did not dispute it worked on the brakes, but presented evidence it works on the brakes at the wheel level, not on the pneumatic braking system.  Hunter testified his recollection was that the hoses were not replaced when Global worked on the brakes.  Instead, he identified two brake pods that were leaking and had to be changed, along with a brake valve.

Nava relies on deposition testimony of Armendariz, who wrote the Root Cause Analysis report.  However, Armendariz had no personal knowledge of Global's

13

involvement with the push-on hose that caused the accident. He had seen documentation that Global had worked on the brakes, but none of the documentation showed that Global installed the hose or inspected the area of the pneumatic braking system. Armendariz heard discussion by persons he could not identify regarding the cause of the accident. Armendariz's testimony does not constitute evidence of duty, breach of duty, or causation.

Nor do Nava's own deposition testimony and declaration demonstrate a triable issue of material fact. Once again, the documentation of repair work and orders on the rig cited by Nava do not establish that Global had anything to do with the push-on hose, or that it had any obligation to inspect the area of the hose. Evidence relating to Global inspecting and repairing the brakes does not focus on the specific issue presented here— whether Global installed, inspected, or repaired the pneumatic braking system, including the failed push-on hose.

Our independent review of the evidence, strictly scrutinizing Global's moving papers and liberally construing Nava's response, reveals no contested issues of material fact. Summary judgment was properly granted on the basis there is no evidence of negligence on the part of Global.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Global Fabricators.


KRIEGLER, J.


We concur:


TURNER, P. J.                                    MOSK, J.

14