[No. B073217. Second Dist., Div. Four. Feb. 22, 1995.]

NELSON L. ROBBINS et al., Plaintiffs and Appellants, v.
HAMBURGER HOME FOR GIRLS et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IIID.

**COUNSEL**

Nelson L. Robbins and Sharon E. Robbins, in pro. per., for Plaintiffs and Appellants.

Morris, Polich & Purdy, Robert S. Wolfe, Douglas J. Collodel, Richard H. Nakamura, Jr., and Marilyn Muir for Defendants and Respondents.

## Opinion

**VOGEL (C. S.), J.**—The then fifteen-year-old daughter of plaintiffs Nelson and Sharon Robbins left home for three days and stayed at a private nonprofit shelter for abused and troubled teenage girls, claiming that she did not want to go home because she was fighting with her parents and her father had physically abused her on three recent occasions. The suspected child abuse was reported to the authorities, who advised the shelter not to disclose the girl's whereabouts. Within that three-day period, the authorities apparently determined to take no action, and plaintiffs then came to the shelter and took their daughter home. Subsequently, plaintiffs filed this action on their own behalf against the shelter and its counselors, alleging federal civil rights violations and various state law causes of action, asserting that the defendants interfered with parental rights of custody and inflicted emotional distress on plaintiffs. The trial court granted summary judgment in favor of defendants on all causes of action. Plaintiffs appeal. We affirm.

I

### Factual Background

Stripped of mere conclusions and legal arguments in plaintiffs' opposition to defendants' motion for summary judgment, the pertinent undisputed and disputed facts supported by deposition testimony and declarations based on personal knowledge (Code Civ. Proc., § 437c, subd. (b)) are as follows.

Defendant and respondent Hamburger Home for Girls, doing business as Aviva Center, is a private nonprofit shelter for troubled girls aged 12 to 17. Its purpose is to provide a safe environment for troubled girls and, through individual and group counseling, to enable its temporary residents to work out their problems and return home. It is licensed by the state as a group home and has a contract with the City of Los Angeles to provide services as a residential care facility. It is not, however, a "holding facility" for any city, county, or state entity, nor do any governmental entities "place" minors there. Its temporary residents come there voluntarily and they are free to leave.

All the events concerning this case took place between December 8 and December 12, 1986. On the afternoon of December 8, plaintiffs' 15-year-old daughter Tricia did not return home from high school. She instead went to defendant Aviva Center. She had reported to one of her high school teachers that day that she was having problems at home and did not want to return

home. She told the teacher of one specific instance of her father hitting her when she had done something wrong. Someone at the high school (Tricia did not remember whether it was a friend or a school employee) told Tricia about the Aviva Center and that it was a safe place to go. She went there voluntarily of her own choice. She did not want to go home because she was not getting along with her parents.

When Tricia went to the shelter, defendant and respondent Greg Rose, resident counselor, conducted an intake interview. Tricia told him that she wanted a safe place to stay, she had had a fight with her parents and did not want to return home. Tricia told Rose of three separate occasions of physical abuse by her father, the most recent having occurred the prior weekend. She said she feared for her life and contemplated suicide. As required by the Child Abuse and Neglect Reporting Act, Rose subsequently reported the incidents of suspected abuse to the department of children's services. His written report stated, "Tricia reports 3 incidents in which her father became violent each one progressively worse. 1) Oct. '86 he picked her up & threw her to the floor 3x's[.] 2) Nov. '86 he whipped her on the buttocks & thieghs [*sic*] & again threw her to the floor. 3) 12/8/86 Tricia states that he picked her up by the neck, this left observable marks-bruises, threw her to the ground 3x's & also hit her across the face w/ an open hand."[1] Rose's written report, dated December 16, states that he reported the suspected child abuse to the department of children's services by telephone at 1 p.m., December 10.

Rose's declaration states the department of children's services advised him "that I was not to disclose the address of the Aviva Center to Tricia Robbins['s] parents, due to the fact that the allegations of physical abuse involved Tricia Robbins['s] father, Nelson Robbins. [¶] . . . I was further advised that the only information I could give to Tricia Robbins'[s] parents was that she was safe, that she was in protective care, and that all further inquiries could be directed to the Department of Children['s] Services."

When Tricia failed to return home from school on December 8, plaintiffs contacted school employees, who professed lack of knowledge of Tricia's whereabouts. On December 9, the school employees told plaintiffs that Tricia had made allegations of child abuse and that the suspected child abuse had been reported to authorities and to the police. Plaintiffs went to the police station, where a police detective learned that Tricia was at the Aviva Center. The detective telephoned the Aviva Center and put Mr. Robbins on the line.

Mr. Robbins identified himself as Tricia's father, stated that he did not consent to Tricia's being there, and demanded that she be returned to him,

---

[1]Mr. Robbins's declaration denied that he ever inflicted physical abuse or corporal punishment on Tricia.

and that he be allowed to speak to her. According to Robbins's declaration, defendants refused to return Tricia, refused to let plaintiffs speak to her, and refused to divulge the location of Aviva Center. According to Greg Rose's declaration, Rose told Mr. Robbins that "his daughter was safe, that she was in protective care, and that all other inquiries should be directed to the Department of Children['s] Services." Rose further declared that Tricia was free to telephone her parents and that plaintiffs were never advised they could not speak to Tricia. Mr. Robbins's declaration states, however, that at no time did defendants advise him that Tricia was in protective care or that further inquiries should be directed to the department of children's services. Both declarations agree that Mr. Robbins repeatedly telephoned over the next two days making similar demands and receiving similar responses.

Neither side introduced any evidence indicating what action, if any, the department of children's services took in response to the child abuse reports. Mr. Robbins declared that, on December 11, Greg Rose telephoned plaintiffs and said they could come pick up Tricia, but when plaintiffs went to the address Rose gave them, it was not the Aviva Center but a closed commercial building.

Plaintiffs picked up Tricia at the Aviva Center on December 12. When Tricia was told her parents were coming, she did not want to go, she wanted to stay at the shelter indefinitely. Defendants told her there was no basis to hold her there and that she should go home with her parents. After a difficult meeting with plaintiffs and the counselors, Tricia went home with plaintiffs.

II

PROCEDURAL BACKGROUND

Plaintiffs' first amended complaint, filed in propria persona, asserts seven causes of action against defendants (the Los Angeles Unified School District defendants are not before us; see *Robbins* v. *Los Angeles Unified School Dist.* (1992) 3 Cal.App.4th 313 [4 Cal.Rptr.2d 649]). The first is under the federal Civil Rights Act, title 42 United States Code section 1983, alleging that defendants wrongfully deprived plaintiffs of parental rights of child custody in violation of plaintiffs' constitutional due process interests. The second alleges that defendants interfered in plaintiffs' personal rights declared by Civil Code section 49, which states, "The rights of personal relations forbid: [¶] (a) The abduction or enticement of a child from a parent . . . ." These constitute the gist of the action. The other causes of action flow from the

first two, on the assumption that defendants' conduct was unjustified.[2] All causes of action are on behalf of plaintiffs, the parents; Tricia is not a party, nor is any cause of action asserted on her behalf.

## III

### DISCUSSION

Summary judgment shall be granted if all the papers submitted show there is no triable issue of material fact and that the moving party is entitled to judgment as a matter of law. This presents a question of law for our review independent of the trial court's conclusion. (Code Civ. Proc., § 437c, subd. (c); *Preach* v. *Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1449-1450 [16 Cal.Rptr.2d 320].)

We conclude summary judgment was properly granted because defendants either committed no tortious acts or were privileged to act as they did or were immune from liability.[3] The uncontradicted evidence shows that Tricia voluntarily went to the shelter and that defendants' conduct was for the purposes either of complying with the Child Abuse and Neglect Reporting Act or of protecting Tricia from possible physical abuse during a short period while the public authorities investigated.

### A

### *Child Abuse and Neglect Reporting Act*

As plaintiffs contend, their action is not based on the reporting of child abuse but rather on the subsequent concealment of Tricia's whereabouts. The whole episode arose, however, amid allegations of physical abuse, and we find it appropriate to begin by reviewing the legal context in which it occurred.

The Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.)[4] requires designated persons coming into contact with children to report to the authorities any suspected child abuse. There appears no dispute that

[2]These allege: conspiracy with the school district defendants to kidnap and entice Tricia; fraudulent misrepresentation that defendants' conduct was required or justified by law; negligent hiring and inadequate training of employees in the requirements of the law; and negligent and intentional infliction of emotional distress.

[3]In the nonpublished portion of this opinion, we examine and reject plaintiffs' procedural objections to the trial court's grant of summary judgment

[4]All statutory references in this section, IIIA, are to the Penal Code, unless otherwise indicated.

defendant Aviva Center and its defendant employees are "child care custodian[s]" required by the act to report suspected child abuse. Section 11165.7 defines child care custodian to include, inter alia, "an administrator or employee of a public or private organization whose duties require direct contact and supervision of children" and "an employee of a child care institution including, but not limited to, . . . group home personnel, and personnel of residential care facilities . . . ." Section 11166 requires that any child care custodian "who has knowledge of or observes a child, in his or her professional capacity or within the scope of his or her employment, whom he or she knows or reasonably suspects has been the victim of child abuse, shall report the known or suspected instance of child abuse to a child protective agency immediately or as soon as practically possible . . . ."

In order to promote the purpose of the act to protect abused children, section 11172 provides that mandated reporters of child abuse are absolutely immune from liability. Section 11172, subdivision (a) provides, "No child care custodian . . . who reports a known or suspected instance of child abuse shall be civilly or criminally liable for any report required or authorized by this article." (*Thomas* v. *Chadwick* (1990) 224 Cal.App.3d 813, 820-822 [274 Cal.Rptr. 128].) This absolute immunity extends not only to the making of the initial report, but also to "conduct giving rise to the obligation to report, such as the collection of data, or the observation, examination, or treatment of the suspected victim" performed in a professional capacity (*Krikorian* v. *Barry* (1987) 196 Cal.App.3d 1211, 1222-1223 [242 Cal.Rptr. 312]) and to subsequent communications between the reporter and the public authorities responsible for investigating or prosecuting child abuse. (*Thomas* v. *Chadwick, supra*, 224 Cal.App.3d at pp. 821-822 & fn. 10; *Ferraro* v. *Chadwick* (1990) 221 Cal.App.3d 86, 94-95 [270 Cal.Rptr. 379]; see also *Alicia T.* v. *County of Los Angeles* (1990) 222 Cal.App.3d 869, 883, fn. 4 [271 Cal.Rptr. 513].) ■ Because Congress authorized the states to enact child abuse prevention legislation with statutory immunity for reporters of child abuse, the immunity in section 11172 is also generally a defense to an action based on the federal Civil Rights Act. (*Thomas* v. *Chadwick, supra*, 224 Cal.App.3d at pp. 823-826.)

■ Thus, to the extent plaintiffs' action is based on defendants' reporting suspected child abuse and defendants' communications with the department of children's services, defendants are immune from liability.

■ The gist of plaintiffs' action, however, is not the *reporting* of child abuse but the subsequent concealment of Tricia while the authorities investigated. The statutory absolute immunity for *reporting* suspected child abuse follows from the mandate that defendants do so under criminal penalty.

(§§ 11166, subd. (a), 11172, subd. (e); *Thomas* v. *Chadwick, supra,* 224 Cal.App.3d at pp. 819-820 & fn. 8.) Although defendants followed advice of the department of children's services to avoid disclosing Tricia's whereabouts, they do not cite any statute *requiring* them to do so. In *James W.* v. *Superior Court* (1993) 17 Cal.App.4th 246 [21 Cal.Rptr.2d 169], cited by plaintiffs, a child who had been sexually molested by someone, and whose molestation had already been reported, was placed in a foster home. Allegedly the foster mother and a private family counselor, over the following two-and-one-half-year period, repeatedly pressured the child to name her father as the one who had molested her. The court held the foster mother and therapist were not protected by the absolute statutory immunity, because their conduct did not involve the reporting of abuse but rather a subsequent attempt to assume the role of the public investigating or prosecuting agencies. (*Id.* at pp. 256-257.)

Although the instant case is distinguishable from *James W.* because here defendants followed the advice, rather than usurped the function, of the department of children's services, and the conduct lasted only a few days while the department determined whether to take action (see *Kempster* v. *Child Protective Services* (1987) 130 A.D.2d 623 [515 N.Y.S.2d 807, 809, 810]), we assume that the statutory absolute immunity in section 11172 does not afford defendants absolute immunity for their conduct in refusing to disclose Tricia's whereabouts while the department of children's services investigated. We affirm the summary judgment in favor of defendants, however, because we conclude there is no evidence defendants violated Civil Code section 49 or plaintiffs' federal constitutional rights of parenthood, and in any event defendants' conduct was otherwise privileged under the circumstances.

B

*Civil Code Section 49 and Common Law Privilege*

Civil Code section 49 prohibits the "abduction" or "enticement" of a child. As Tricia's deposition reveals, Tricia voluntarily went to Aviva Center of her own free choice, seeking a safe place to stay and a shelter from claimed potential abuse. As revealed by Tricia's deposition and Greg Rose's declaration, Tricia sought out defendants; she was free to leave the shelter or to contact her parents. There is absolutely no evidence of force, coercion, or inducement claimed by plaintiffs in their complaint.

Plaintiffs contend that because Tricia was a minor, below the legal age of consent, it is legally irrelevant whether Tricia voluntarily went to Aviva

Center. In this respect, plaintiffs misinterpret *Surina* v. *Lucey* (1985) 168 Cal.App.3d 539 [214 Cal.Rptr. 509], on which they heavily rely. *Surina* was resolved by demurrer; it was pleaded, and therefore had to be assumed true, that a 16-year-old girl's uncle "abducte[d]" and "entice[d]" the girl away from her parents. (*Id.* at p. 542.) A cause of action was clearly stated in the language of Civil Code section 49 itself. Here, on summary judgment, the uncontradicted evidence shows Tricia was not abducted or enticed.

The following language in *Surina*, on which plaintiffs rely, was dictum in the circumstances of that case: "The consent of the child is, of course, no defense to the parents' action. . . . [¶] Put simply, a third party may not interfere with the parents' right of custody, even if motivated by kindness or affection toward the child." (168 Cal.App.3d at p. 543.)

The *Surina* court's citation of section 700 of the Restatement Second of Torts for that proposition shows why plaintiffs have taken *Surina* out of context and why defendants' conduct was privileged.[5] ■ The comments to section 700 provide, in pertinent part (all italics added): "So, too, the action can be maintained against one who, with knowledge that the child is away from home against the will of the parent, *imprisons* it or *induces* the child, whether by affording it employment or otherwise, not to return home." The comments continue in pertinent part: *"No action can be maintained, however, against one who merely gives shelter and sustenance to a child known by the actor to have left home without the parent's permission, if the child is not induced by other means to remain away from its home."* (Rest.2d Torts, § 700, com. a, p. 505.) *"Unless the actor is privileged, on which see Comments e and f,* his motive or purpose in preventing the child from returning home or inducing it not to return, is immaterial. Thus the actor may be inspired by motives of kindness and affection toward the child but none the less become liable for interfering with the interests of its lawful custodian." (Com. b, p. 505.) *"Privilege to rescue from physical violence. One is not liable for rescuing a child from physical violence inflicted by its parent in excess of his parental privilege. To entitle the actor to immunity, however, it must appear reasonably probable that the child is about to suffer immediate harm or that it will be subjected to immediate harm if it returns to its home. It is also necessary to the actor's protection that he act for the*

---

[5]Section 700 of the Restatement Second of Torts provides: "One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent."

*purpose of saving the child from the threatening danger or of assisting him to escape from it.*" (Com. e, p. 506.)[6]

■ The Restatement comments show that in the circumstances of the undisputed material facts of this case, (1) defendants did not interfere with plaintiffs' parental rights, because there is no evidence defendants induced Tricia to remain at the shelter, and (2) defendants' conduct was privileged because it was based on a reasonable apprehension Tricia could suffer immediate physical harm if she returned home or her whereabouts were disclosed.

■ In their reply brief, plaintiffs call attention to provisions of the Welfare and Institutions Code relating to temporary custody of minors by peace officers, probation officers, and social workers. (Welf. & Inst. Code §§ 305-308.) In such cases, Welfare and Institutions Code section 308, subdivision (a) requires prompt notification of parents as to the place the minor is being held, except where a court, or a peace officer, or social worker if obtaining a court order is impracticable, determines the child would be endangered by disclosure.[7] These provisions do not support plaintiffs' claims here, because Tricia was voluntarily at Aviva Center. She was not taken into custody by any public authority, and she remained at Aviva Center of her own free will. Accordingly, defendants were not obligated to comply with the statutory duties imposed on peace officers, probation officers, and social workers.

---

[6]Several courts have cited these comments in a general context. (See *Murphy* v. *I.S.K. Con. of New England* (1991) 409 Mass. 842, fn. 18 [571 N.E.2d 340, 351]; *McBride* v. *Magnuson* (1978) 282 Ore. 433 [578 P.2d 1259, 1260].) Here, we apply them to specific facts.

[7]Welfare and Institutions Code section 308, subdivision (a) provides: "When a peace officer or social worker takes a minor into custody pursuant to this article, he or she shall take immediate steps to notify the minor's parent, guardian, or a responsible relative that the minor is in custody and the place where he or she is being held, except that, upon order of the juvenile court, the parent or guardian shall not be notified of the exact whereabouts of the minor. The court shall issue such an order only upon a showing that notifying the parent or guardian of the exact whereabouts would endanger the child or his or her foster family or that the parent or guardian is likely to flee with the child. However, if it is impossible or impracticable to obtain a court order authorizing nondisclosure prior to the detention hearing, and if the peace officer or social worker has a reasonable belief that the minor or his or her foster family would be endangered by the disclosure of the minor's exact whereabouts, or that the disclosure would cause the custody of the minor to be disturbed, the peace officer or social worker may refuse to disclose the place where the minor is being held. The county welfare department shall make a diligent and reasonable effort to ensure regular telephone contact between the parent and a child of any age, prior to the detention hearing, unless that contact would be detrimental to the child. The initial telephone contact shall take place as soon as practicable, but no later than five hours after the child is taken into custody. The court shall review any such decision not to disclose the place where the minor is being held at the detention hearing, and shall conduct that review within 24 hours upon the application of a parent, guardian, or a responsible relative."

## C

### *Federal Civil Rights Act*

Title 42, section 1983 of the United States Code provides, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

 "The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.' This second element requires that the plaintiff show that the defendant acted 'under color of law.' " (*Adickes* v. *Kress & Co.* (1970) 398 U.S. 144, 150 [26 L.Ed.2d 142, 150, 90 S.Ct. 1598].)

As to this second element, private parties ordinarily are not subject to suit under title 42 United States Code section 1983, unless, sifting the circumstances of the particular case, the state has so significantly involved itself in the private conduct that the private parties may fairly be termed state actors. (*Lowe* v. *Aldridge* (11th Cir. 1992) 958 F.2d 1565, 1572; *Life Ins. Co. of North America* v. *Reichardt* (9th Cir. 1979) 591 F.2d 499, 501.) Among the factors considered are whether the state subsidized or heavily regulated the conduct, or compelled or encouraged the particular conduct, whether the private actor was performing a function which normally is performed exclusively by the state, and whether there was a symbiotic relationship rendering the conduct joint state action. (*Rendell-Baker* v. *Kohn* (1982) 457 U.S. 830, 840-843 [73 L.Ed.2d 418, 427-429 102 S.Ct. 2764].)

 Here, defendant Aviva Center is a private nonprofit organization whose purpose is to provide a safe harbor for troubled and abused teenage girls. Tricia voluntarily came to the shelter as a private client. Tricia was not placed there by the department of children's services; she was not in the custody of the department of children's services. The department did not tell defendants to *detain* Tricia. Tricia was free to leave or return to her parents, in accordance with defendants' purpose and policy as a voluntary shelter. The most that could be said for state action here is that the department

advised defendants not to disclose the shelter's address to plaintiffs. This is not sufficient in light of all the other circumstances here indicating private conduct.

Defendants cite a case so closely in point we find it compelling. In *Miriam P.* v. *City of New York* (1990) 163 A.D.2d 39 [558 N.Y.S.2d 506], a six-year-old child was brought to defendant private hospital with a swollen left thigh and hip. X-rays disclosed a fractured left femur. The hospital reported suspected child abuse to the special services for children. After extensive treatment, the child was medically cleared to be discharged from the hospital on January 16, 1987, and the mother requested the child's release. "However, since SSC had not yet completed its investigation, it provided the hospital with a new authorization number, continuing the child on a 'special hold' pending the completion of the investigation. After the child was discharged from the hospital on February 27, 1987, her mother instituted this action against St. Luke's-Roosevelt Hospital alleging unlawful detention and false arrest, a civil rights violation under 42 U.S.C. § 1983 and the infliction of mental distress." (*Id.* at p. 507.) The court held that "defendant was not acting under color of state law in caring for the child pending the completion of SSC's investigation." (*Id.* at p. 509.) "During the period of time in which the child was detained on a hold, the hospital was in effect, acting as a foster home or hotel designated by SSC pending the completion of the investigation. As such, the hospital was not acting under color of state law for § 1983 purposes." (*Id.* at p. 508.) The court (*ibid.*) distinguished *Perez* v. *Sugarman* (2d Cir. 1974) 499 F.2d 761. In *Perez*, which found the private institutions to be state actors, the state child welfare officials took *custody* of plaintiff's two children and *placed* them for two years at private institutions in fulfillment of the state's obligation to care for them.

Just as the hospital in *Miriam P.* was not acting under color of law despite detaining the small child on a "special hold" by the special services for children, defendants in the instant case were not acting under color of law in allowing Tricia voluntarily to stay at the shelter and following advice of the department of children's services not to disclose the address of the shelter.

The other required element of a federal civil rights cause of action is that the right of which the plaintiff was deprived is one secured by the laws and Constitution of the United States. (*Willard* v. *City of Myrtle Beach, SC* (D.S.C. 1989) 728 F.Supp. 397.) Plaintiffs contend this case involves a liberty interest, protected by the due process clause of the Fourteenth Amendment, in " 'preservation of family integrity.' " Plaintiffs' cited cases, however, are ones in which parental rights were permanently terminated, or

in which state officials formally took custody away from a parent for a substantial period of time. (*Santosky* v. *Kramer* (1982) 455 U.S. 745 [71 L.Ed.2d 599, 102 S.Ct. 1388] [permanent termination]; *Duchesne* v. *Sugarman* (2d Cir. 1977) 566 F.2d 817 [deprivation of custody since December 17, 1969, still continuing at time of decision in 1977]; *In re Kelvin M.* (1978) 77 Cal.App.3d 396 [143 Cal.Rptr. 561] [child declared ward of juvenile court based on mother's disability, with no hearing on father's claim that he was able to take custody].)

Here, the initial disruption of the family integrity is attributable to Tricia, who voluntarily left home and sought shelter from defendants. Tricia was not taken into custody by the department of children's services. Tricia was not detained, abducted, or induced by defendants to remain away from home. The most defendants did was to decline to disclose Tricia's whereabouts to plaintiffs; even this lasted only three days at most. In these circumstances, we find the brief nondisclosure of the shelter's address while counseling Tricia and while the authorities investigated does not involve a violation of a fundamental interest of plaintiffs protected by the Fourteenth Amendment. *Willard* v. *City of Myrtle Beach, SC, supra*, 728 F.Supp. 397 is persuasive, on an analogous set of facts. There, city police arrested a 17-year-old boy for public intoxication and disorderly conduct and detained him in a jail cell for 4 hours, after which he was released to his mother. His parents thereafter brought a federal civil rights suit alleging that the defendants' conduct violated their protected liberty interest in the companionship and association of their son. The court declined to recognize any broad-ranged constitutional liberty interest in parents arising from such temporary detention of their children. (*Id.* at p. 404.)

Finally, even assuming plaintiffs make out a triable issue of fact as to both of the necessary elements of a prima facie case, a federal civil rights action is subject to defenses of immunity and privilege (*Tower* v. *Glover* (1984) 467 U.S. 914, 920 [81 L.Ed.2d 758, 764, 104 S.Ct. 2820]; *Imbler* v. *Pachtman* (1976) 424 U.S. 409, 417-418 [47 L.Ed.2d 128, 135-137, 96 S.Ct. 984]), which sometimes appear as a matter of law on summary judgment. (E.g., *Elene H.* v. *County of Los Angeles* (1990) 220 Cal.App.3d 1445, 1454 [269 Cal.Rptr. 783].)

As stated *ante*, page 679, to the extent plaintiffs' action is based on conduct immunized by Penal Code section 11172, defendants have absolute immunity on the federal civil rights action as well. (*Thomas* v. *Chadwick, supra*, 224 Cal.App.3d 813, 823-826.) To the extent their conduct is not within that absolute immunity, defendants, who are private parties, may assert a defense of good faith or probable cause (*Wyatt* v. *Cole* (1992) 504

U.S. 158, 169 [118 L.Ed.2d 504, 516, 112 S.Ct. 1827, 1834]) or common law privilege. (*Imbler* v. *Pachtman, supra*, 424 U.S. at p. 418 [47 L.Ed.2d at p. 136] [". . . § 1983 is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them"].) At pages 681-682, *ante*, we concluded based on the comments to section 700 of the Restatement Second of Torts, that defendants have no tort liability for merely giving shelter to a child known to have left home without parental permission, if the child was not induced by other means to stay away from home and defendants were privileged based on probable cause to protect the child from imminent physical violence. By the same token, this is a defense to the civil rights action.

### D*

*Procedural Issues*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV

### DISPOSITION

The judgment is affirmed.

Woods (A. M.), P. J., and Hastings, J., concurred.

---

*See footnote, *ante*, page 671.