TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | No. 19-301 |
| of | : | September 29, 2022 |
| ROB BONTA | : | |
| Attorney General | : | |
| MARC J. NOLAN[1] | : | |
| Deputy Attorney General | : | |

THE HONORABLE KARIN E. SCHWAB, COUNTY COUNSEL OF PLACER COUNTY, has requested an opinion on a question related to the Child Abuse and Neglect Reporting Act.

**QUESTION PRESENTED AND CONCLUSION**

Is a paid unlicensed victim advocate working with commercially sexually exploited children, or children at risk of becoming commercially sexually exploited, a mandated reporter under the Child Abuse and Neglect Reporting Act (CANRA)?

As a general matter, no. Paid victim advocates are not on CANRA's list of mandated reporters of child abuse. But these advocates will nonetheless meet CANRA's definition of a mandated reporter if they perform a function, such as supervising children as part of their employment, that places them in an enumerated reporter category under

_____

[1] This opinion reflects substantial research, analysis, and drafting by former Deputy Attorney General Diane Eisenberg, who led the work on this opinion until her retirement.

1

CANRA. And some paid victim advocates are mandated reporters because they have a license that places them in an enumerated reporter category.

## BACKGROUND

**Statutory Framework**

The Child Abuse and Neglect Reporting Act ("CANRA" or "Act") is a comprehensive statutory scheme designed to prevent and remediate child abuse and neglect by mandating that certain classes of individuals report instances of known or suspected child abuse or neglect.[2] The Act reflects the state's compelling interest in preventing child abuse and is "premised on the belief that reporting suspected abuse is fundamental to protecting children."[3] Its objective is "to identify victims, bring them to the attention of the authorities, and, where warranted, permit intervention."[4] At the same time, persons investigating cases of suspected abuse must "consider the needs of the child victim and . . . do whatever is necessary to prevent psychological harm to the child victim."[5]

The question presented here focuses on those whom the Act designates as mandated reporters for known or suspected "commercial sexual exploitation" of children. CANRA defines "child abuse or neglect" to include the sexual abuse of a child, which in turn means sexual assault, sexual exploitation, or commercial sexual exploitation of a child.[6] The commercial sexual exploitation of a child refers to either the sexual trafficking of a child, or the provision of food, shelter, or payment in exchange for the performance of any of a number of sexual acts.[7] The California Department of Social

---

[2] Pen. Code, §§ 11164-11174.3; see *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 707; *Castillo v. County of Los Angeles* (C.D. Cal. 2013) 959 F.Supp.2d 1255, 1260.

[3] *Stecks v. Young* (1995) 38 Cal.App.4th 365, 371; see also Pen. Code, § 11164, subd. (b) (intent and purpose of CANRA is to protect children from abuse and neglect).

[4] *Stecks v. Young*, *supra*, 38 Cal.App.4th at p. 371.

[5] Pen. Code, § 11164, subd. (b).

[6] Pen. Code, §§ 11165.6, 11165.1. CANRA defines "child" as a person under the age of 18 years. (Pen. Code, § 11165.) This opinion uses the terms "child" and "minor" interchangeably unless indicated otherwise.

[7] Pen. Code, § 11165.1, subd. (d).

Services thus defines a commercially sexually exploited child as a child who is sexually trafficked or who receives anything of value for the performance of a sex act.[8]

CANRA requires a mandated reporter to make a report whenever that person, within the person's professional capacity or scope of employment, "has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect."[9] The report must be made to a police department, sheriff's department, county probation department, or county welfare department, and is then investigated by local law enforcement or another local authority, as specified.[10] A report must include the name and contact information of the mandated reporter; the capacity that makes the person a mandated reporter; the information that gave rise to the reasonable suspicion of child abuse or neglect and the source of that information; and, if known, certain other information about the child, the child's parents, and the person or persons who might have abused or neglected the child.[11]

A mandated reporter who fails to report an incident of known or reasonably suspected child abuse or neglect is guilty of a misdemeanor punishable by up to six months confinement in a county jail, or a fine of $1,000, or both.[12] CANRA confers on mandated reporters absolute immunity from civil or criminal liability for any required or authorized report, even if the reporter knowingly or recklessly makes a false report.[13] For persons who make reports but are not designated as mandated reporters, CANRA provides only a qualified immunity: a non-mandated reporter is immune from civil or

---

[8] Cal. Dept. of Social Services, Health and Human Services Agency, All County Letter No. 16-85 (Sept. 30, 2016) p. 5, https://www.cdss.ca.gov/lettersnotices/entres/getinfo/acl/2016/16-85.pdf (as of September 28, 2022); see also Welf. & Inst. Code, § 300, subd. (b)(2).

[9] Pen. Code, § 11166, subd. (a).

[10] Pen. Code, §§ 11165.9, 11166, subds. (a), (j).

[11] Pen. Code, § 11167, subd. (a).

[12] Pen. Code, § 11166, subd. (c); see also Pen. Code, § 11166.01, subd. (b) (providing for enhanced penalties under specified circumstances).

[13] Pen. Code, § 11172, subd. (a); *Dwight R. v. Christy B.*, *supra*, 212 Cal.App.4th at p. 708; *Arce v. County of Los Angeles* (2012) 211 Cal.App.4th 1455, 1485 (immunity extends even to negligent, knowingly false, or malicious reports of abuse).

criminal liability unless it can be proven that the person knowingly made a false report or made a report with reckless disregard of the truth.[14]

**Paid Victim Advocates**

This opinion request asks about the reporting status of paid unlicensed victim advocates, giving the example of employees who work as domestic violence counselors, sexual assault counselors, or human trafficking caseworkers, but are not licensed therapists or interns.  Although CANRA does not define these terms, federal law defines "victim advocate" as someone who provides services to victims under the auspices of a victim services program, and defines "victim service provider" as an organization or entity that provides services at low or no cost to victims of domestic or dating violence, sexual assault, stalking, and human trafficking.[15]  This includes rape crisis centers, shelters, and programs that provide crisis intervention, counseling, victim advocacy, or other supportive services.[16]  Many victim service providers offer programs and services specifically designed to assist commercially sexually exploited youth.[17]

Victim advocates are trained to assist, counsel, and provide guidance to victims.[18] And advocates for commercially sexually exploited children have often received

---

[14] Pen. Code, § 11172, subd. (a); *Dwight R. v. Christy B.*, *supra*, 212 Cal.App.4th at p. 708 (referring to "voluntary reporters"); *Elijah W. v. Super. Ct.* (2013) 216 Cal.App.4th 140, 154, fn. 10 (referring to "discretionary reporters").

[15] See U.S.C. § 12291(a)(48) (Violence Against Women Act).  See, e.g., 34 U.S.C. § 12291(a)(50). Victim service providers often receive federal funding through grant programs authorized by the Violence Against Women Act of 1994 and subsequent legislation.  (See U.S. Dept. of Justice, Office on Violence Against Women, OVW Grants and Programs, https://www.justice.gov/ovw/grant-programs [as of Sep. 28, 2022].)

[16] See Civ. Code, § 1798.79.8, subd. (c); 34 U.S.C. § 12291(a)(50).  Advocacy may involve legal, economic, medical, civil or criminal justice, immigration, and social support systems issues; additional services that may be offered by providers include accompaniment services, community education and outreach, telephonic or web-based hotlines, and information and referrals.  (See 34 U.S.C. § 12291(a)(51); Pen. Code, § 13837, subd. (b)(2).)

[17] See, e.g., Pen. Code, § 13837, subds. (a), (b)(1), (b)(2)(A)-(H) (providing for grants to child sexual exploitation and sexual abuse victim counseling centers and prevention programs, and specifying services that providers must offer).

[18] 94 Ops.Cal.Atty.Gen. 66, 68 (2011) (describing role of advocate assisting victims of sexual assault).

4

extensive training in the dynamics of exploitation and strategies for engaging with commercially sexually exploited children.[19]  While many victim advocates lack a professional license, their training in relevant areas allows them to do some work similar to that of a licensed professional.[20]  For example, in California, both licensed and unlicensed individuals may qualify to provide services as sexual assault counselors, domestic violence counselors, and human trafficking caseworkers.[21]

The relationship between a child and a victim service provider or victim advocate is usually voluntary and can be terminated by the child.[22]  Victim service providers and victim advocates are under an ethical duty to protect the confidential communications and records of those they assist, unless legally compelled to disclose the confidential

---

[19] Child Welfare Council CSEC Action Team, Memorandum of Understanding Template for State and Federal Commercially Sexually Exploited Children (CSEC) Requirements (2016) p. 19, https://caltribalfamilies.org/wp-content/uploads/2020/12/CSEC_MOU-FINAL-111816.pdf (as of Sep. 28, 2022).

[20] A license, in this context, is permission granted under state authority, in recognition of specified qualifications, to engage in a profession or occupation regulated by the Business and Professions Code.  (See Bus. & Prof. Code, § 23.7; see also Catharina J.H. Dubbelday, *The Psychotherapist-Client Testimonial Privilege: Defining the Professional Involved* (1985) 34 Emory L.J. 777, 816.  The article notes that being able to employ unlicensed victim advocates enables service providers to assist greater numbers of victims who lack the financial resources to obtain services from for-profit providers.  (*Id*. at pp. 815-816.)

[21] A person may qualify to be a sexual assault counselor or a human trafficking caseworker either through having some combination of professional license, advanced degree, and relevant experience, as specified, or by having completed a minimum of 40 hours of training in relevant areas, as specified.  (Evid. Code, §§ 1035.2 [sexual assault counselor], 1038.2, subd. (c) [human trafficking caseworker].)  A sexual assault counselor must also have received a certificate evidencing completion of a training program issued by a counseling center that meets specified requirements.  (Evid. Code, § 1035.2, subd. (a).)  A person may qualify to be a domestic violence counselor by completing a minimum of 40 hours of training in relevant areas, as specified.  (Evid. Code, § 1037.1.)

[22] However, minors under the age of 16 who are victims of sex crimes and are already involved in the juvenile court system, and who refuse to testify in a matter, may be required to meet with a victim advocate, as specified.  (Code Civ. Proc., § 1219.5.)

information.[23]  And certain victim advocates also have a legal duty to protect the confidentiality of communications between the victim and the advocate, unless disclosure is legally required or there is a waiver of the protection.[24]

As to the specific request that we address the reporting status under CANRA of *paid* victim advocates, we understand that the requestor intends to distinguish this group from unpaid volunteers.  As a general rule, "volunteers of public or private organizations whose duties require direct contact with and supervision of children are not mandated reporters" under CANRA.[25]

## ANALYSIS

### CANRA Does Not Designate Paid Victim Advocates As Mandated Reporters

CANRA lists mandated reporters in Penal Code section 11165.7(a), which contains numerous subdivisions identifying mandated reporter categories.[26]  Many of these subdivisions include multiple occupations and positions.  For example, section 11165.7(a)(15) designates as a mandated reporter a "social worker, probation officer, or parole officer."  And subdivision (a)(21) provides that a mandated reporter is any "physician and surgeon, psychiatrist, psychologist, dentist, resident, intern, podiatrist, chiropractor, licensed nurse, dental hygienist, optometrist, marriage and family therapist, clinical social worker, professional clinical counselor, or any other person who is

---

[23] See Off. for Victims of Crime, U.S. Off. of Justice Programs, Achieving Excellence: Model Standards for Serving Victims and Survivors of Crime, Ethical Standard 3.1, https://ovc.ojp.gov/sites/g/files/xyckuh226/files/model-standards/6/ethical_standards_3.html (as of Sep. 28, 2022).

[24] Evid. Code, §§ 1035.4, 1036, 1037.2, 1037.6, 1038, 1038.1.

[25] Pen. Code, § 11165.7, subd. (b) (providing that such persons are nonetheless "encouraged to obtain training in the identification and reporting of child abuse and neglect and are further encouraged to report known or suspected instances of child abuse or neglect . . . .")  CANRA establishes a different rule for volunteers of a Court Appointed Special Advocate program.  Such volunteers *are* mandated reporters. (Pen. Code, § 11165.7, subds. (a)(35), (b).)

[26] Penal Code section 11165.7(a) consists of an introductory clause—"As used in this article, 'mandated reporter' is defined as any of the following:"—followed by 49 separate, numbered subdivisions.

19-301

currently licensed under Division 2 (commencing with Section 500) of the Business and Professions Code."[27]

The extensive list of mandated reporters in Penal Code section 11165.7(a) does not include "victim advocate" (whether paid or unpaid). Nor does it include the specific victim advocate positions identified this opinion request of sexual assault counselor, domestic violence counselor, or human trafficking caseworker. As the Court of Appeal has observed, the Legislature intended that section 11165.7(a) set forth a comprehensive list of mandated reporters.[28] We therefore start from the premise that individuals who are not in a listed category in some capacity are not mandated reporters. This comports with the maxim "*expressio unius est exclusio alterius*," the principle that the expression of certain things in a statute necessarily involves exclusion of other things not expressed.[29]

The Legislature has frequently revisited the issue of who should be a mandated reporter of known or suspected child abuse. Penal Code section 11165.7 has been amended 27 times since the enactment of CANRA in 1987, and the Child Abuse Reporting Law, which preceded CANRA, was amended 62 times between 1981 and 1987.[30] Many of those amendments have expanded the list of mandated reporters to include additional occupations and positions.[31] But the Legislature has never added victim advocates to the list of mandated reporters.

---

[27] Pen. Code, § 11165.7, subds. (a)(15), (a)(21). Division 2 of the Business and Professions Code, which is referenced in subdivision (a)(21) of Penal Code section 11165.7, is titled "Healing Arts." This division contains provisions on licensed professionals, such as clinical laboratory technologists, midwives, speech-language pathologists and audiologists, occupational therapists, physical therapists, naturopathic doctors, psychiatric technicians, and educational psychologists, who are not explicitly named in subdivision (a)(21), but are mandated reporters by virtue of being licensed under Division 2 of the Business and Professions Code. (See Bus. & Prof. Code, §§ 1260-1264, 2512.5, 2532, 2532.2, 2570.3, 2635, 2636, 3630, 4510, 4511, 4989.20 [licensure requirements for these professions].)

[28] See *P.S. v. San Bernardino City Unified School Dist.* (2009) 174 Cal.App.4th 953, 963.

[29] *Dyna-Med, Inc. v. Fair Empl. & Hous. Commn.* (1987) 43 Cal.3d 1379, 1391, fn. 13, citation omitted (*Dyna-Med*).

[30] Sen. Jud. Com., Analysis of Sen. Bill No. 1219 (1987-1988 Reg. Sess.) as amended May 14, 1987, May 19, 1987, p. 1.

[31] See *Stecks v. Young*, *supra*, 38 Cal.App.4th at p. 371.

7

Moreover, the Legislature has at least once considered designating certain unlicensed victim advocates as mandated reporters, but rejected the proposal. In 1983, the Legislature considered a bill to amend the Child Abuse Reporting Law, the predecessor to CANRA.[32] One provision of this bill would have added certain social workers and counselors to the list of "nonmedical practitioners" required to report known or suspected child abuse.[33] The purpose of the proposed provision was to ensure that these practitioners would be entitled to the same immunity from liability for reporting suspected cases of child abuse as were professionals who were already designated as having the duty to report.[34] But the provision was removed from the bill before it was passed. While we refrain from ascribing undue significance to this deletion, we can infer that, at least at that time, the Legislature did not intend for certain unlicensed victim advocates to be required to report known or suspected child abuse.[35]

The history of amendments to the Child Abuse Reporting Law and to CANRA also shows that when the Legislature has become aware of a gap or ambiguity in the mandated reporter provisions that it wishes to remedy, it has taken action to resolve the issue. A recent amendment to section 11165.7(a), pertaining in part to the reporting status of another group of unlicensed professionals, is illustrative. In 2019, the Legislature considered a bill to add a group of professionals collectively referred to as qualified autism service professionals to the list of mandated reporters in Penal Code section 11165.7(a). The Legislature was informed that some qualified autism service professionals were already mandated reporters because they also occupied another category on the list, such as physician, occupational therapist, or social worker.[36] But

---

[32] Sen. Bill No. 874 (1983-1984 Reg. Sess.) § 3, as introduced Mar. 3, 1983.

[33] *Id*. At that time, the Child Abuse Reporting Law listed those required to report known or suspected child abuse (the term "mandated reporter" was not yet used) under the categories of "child care custodian," "medical practitioner," "nonmedical practitioner," "child protective agency," and "commercial film and photographic print processor." (Former Pen. Code, § 11165, subds. (h)-(l).)

[34] Sen. Com. Jud., Analysis of Sen. Bill No. 874 (1983-1984 Reg. Sess.) as introduced Mar. 3, 1983, p. 4.

[35] "The evolution of a proposed statute after its original introduction is helpful when determining legislative intent," and the Legislature's rejection of a specific provision which appeared in the original version of a bill supports the conclusion that the enacted legislation should not be construed to include the omitted provision. (*People v. Tingcungco* (2015) 237 Cal.App.4th 249, 256, citation omitted.)

[36] Assem. Com. on Public Safety, Analysis of Assem. Bill No. 189 (2019-2020 Reg. Sess.) as introduced Jan. 10, 2019, p. 4.

other providers were not expressly covered by the mandated reporter provisions in effect at the time, and were unsure about whether they had a statutory duty to report.[37] Informed that all qualified autism service professionals serve the same population, regardless of whether they are licensed or unlicensed,[38] the Legislature amended section 11165.7 to expressly add three sub-groups of qualified autism service professionals, including the group of unlicensed providers, to the list of mandated reporters in section 11165.7(a).[39]

The Legislature might similarly find it anomalous that victim advocates who do the same or similar work nonetheless have different reporting statuses under CANRA depending on whether they are licensed in some other capacity. But we cannot say that distinguishing mandated from non-mandated reporters on this basis produces an absurd or wholly irrational result, such that we could imply or presume a reporting requirement for victim advocates who lack a specified professional license.[40] Certain commenters argue there is good reason for leaving this particular category of persons outside of CANRA's mandates. Some victim advocates, for example, noting the factors described earlier that prevent or hinder commercially sexually exploited youth from seeking help, maintain that winning the children's trust by protecting their confidential information is vital to the advocates' ability to provide effective assistance. One commenter has suggested that by not designating paid victim advocates as mandated reporters, the Legislature has allowed for multiple paths for victims to seek assistance or to find safety, since almost everyone else who becomes involved with a vulnerable or at-risk child in a professional capacity is already a mandated reporter. That commenter and others further suggest that when advocates can gain the trust of victims, the victims are in fact more likely to consent to the eventual disclosure of the abuse to authorities, and to cooperate in an investigation. They argue that positioning some victim advocates outside the reach of the reporting mandate helps to effectuate CANRA's objectives.

---

[37] *Ibid*.

[38] Assem. Com. on Appropriations, Analysis of Assem. Bill No. 189 (2019-2020 Reg. Sess.) as introduced Jan. 10, 2019, pp. 2-3.

[39] Pen. Code, § 11165.7, subd. (a)(47), added by Stats. 2019, ch. 674 (A.B. 189), § 1, eff. Jan. 1, 2020 (adding a "qualified autism service provider, a qualified autism service professional, or a qualified autism service paraprofessional," as defined).

[40] *Dyna-Med*, *supra*, 43 Cal.3d at p. 1392 (we are to avoid an interpretation of a statute that would lead to absurd result); see also *People v. Hacker Emporium, Inc*. (1971) 15 Cal.App.3d 474, 477.

9

Conversely, commenters from law enforcement and county government agencies argue that a mandated reporting requirement for paid victim advocates would give effect to the Legislature's intent that as many commercially sexually exploited children are identified to authorities as possible. This is important, they say, not only for being able to ensure appropriate intervention for and protection of that particular child, but also for the benefit and protection of other actual and potential child victims, who cannot be protected if both they and the perpetrators of the exploitation and abuse remain hidden from view.

Obviously, there are profound policy considerations on both sides of this issue. It is not within our province, however, to exercise our own judgments or notions respecting legislative policy, wisdom, or expediency.[41] It is within the Legislature's purview to designate mandated reporters. As we have seen, should the Legislature wish to add paid victim advocates, regardless of licensure status, to the list of mandated reporters in Penal Code section 11165.7(a), it certainly knows how to do so.

In light of the structure and history of CANRA, we conclude that paid victim advocates are not mandated reporters unless they also fall within an enumerated reporting category. Of course, some individuals employed in victim advocate capacities will be mandated reporters because they also have a license or perform a function that places them in an established reporter category. For example, licensed psychologists, professional clinical counselors, and marriage and family therapists, are all mandated reporters by virtue of their licenses.[42] In addition, as discussed in the next section below, a victim advocate is a mandated reporter if the advocate is an "employee of a public or private organization whose duties require direct contact [with] and supervision of children . . . ."[43]

**Although Some Victim Advocates May Supervise Children As Part Of Their Job Duties And Therefore Be Mandated Reporters, Supervising Children Is Not A Universal Job Duty Of Victim Advocates**

Some commenters argue that paid victim advocates are mandated reporters under Penal Code section 11165.7(a)(8), which designates as a mandated reporter "[a]n administrator, board member, or employee of a public or private organization whose duties require direct contact [with] and supervision of children, including a foster family agency." In the context of working with commercially sexually exploited youth, paid

---

[41] 67 Ops.Cal.Atty.Gen. 225, 229 (1984).

[42] See Pen. Code, § 11165.7, subd. (a)(21).

[43] Pen. Code, § 11165.7, subd. (a)(8).

victim advocates are typically "employees" who have "direct contact" with children.  The harder question is whether their duties require "supervision of children."

Two authorities are offered to support the view that paid victim advocates are supervisors of children.  The first, the 1995 case of *Robbins v. Hamburger Home for Girls*, concerned a 15-year-old girl who left home and stayed for several days at a private nonprofit shelter for abused and troubled girls, which was licensed by the state as a group home.[44]  While there, the girl reported to a resident counselor employed by the shelter that she had been physically abused by her father, and the counselor reported the allegation of abuse to the Department of Children's Services.[45]  After the girl returned home with her parents, her parents sued the shelter and its counselors, alleging various violations of federal and state law.[46]  The Court of Appeal held that, with respect to making the report of abuse, the counselor and shelter were absolutely immune from liability pursuant to CANRA.[47]  The court found that the counselor and the shelter were mandated reporters, citing the language now located in section 11165.7(a)(8) – "duties [that] require direct contact and supervision of children."[48]  It also cited another mandated reporter subcategory that covers "an employee of a child care institution including, but not limited to, . . . group home personnel, and personnel of residential care facilities."[49]

The second authority is a 1989 Attorney General opinion that concluded that a person who taught ballet at a private ballet school was required to report instances of

[44] *Robbins v. Hamburger Home for Girls* (1995) 32 Cal.App.4th 671, 675 (*Robbins*).

[45] *Id*. at p. 676.

[46] *Id*. at pp. 675, 677-678.

[47] *Id.* at p. 679.

[48] At the time of the *Robbins* case, CANRA did not employ the term "mandated reporter" and did not list all mandated reporters in one section, as it does today.  Instead, it grouped those who were required to report known or suspected abuse under several different broad classifications, such as "child care custodian" and "health practitioner."  (See former Penal Code sections 11165.7-11165.11 and 11165.15-11165.16.)  The classification of "child care custodian" included "an administrator or employee of a public or private organization whose duties require direct contact and supervision of children"—as does subdivision (a)(8) of Penal Code section 11165.7 today.

[49] *Id*. at pp. 678-679.  The quoted language now appears in Penal Code section 11165.7, subdivision (a)(14).

child abuse under CANRA.[50] The basis for our conclusion in that opinion was that a ballet teacher at the school qualified as a "teacher," according to that word's ordinary meaning, and that CANRA expressly designated teachers as a subcategory of required reporters.[51] The 1989 opinion did not interpret the phrase "direct contact [with] and supervision of children"; the provision containing that language was not added to CANRA until 1991.[52] But the requestor asks us to look to our examination of the word "teacher" in this opinion as support for adopting a broad definition of the word "supervision" in relation to paid victim advocates and section 11165.7(a)(8).

We agree that the residential counselor in *Robbins* and the ballet teacher in our prior opinion were both mandatory reporters, but this does not answer the question of whether all victim advocates' duties require "supervision of children" within the meaning of section 11165.7(a)(8). There is no definition in CANRA of the term "supervision." Therefore, in accordance with well-established principles of statutory construction, we look to the usual and ordinary meaning of the word in question, which may often be obtained by referring to a dictionary.[53] The primary definition of "supervision" in relation to another is the "action or function of overseeing, directing, or taking charge of a person, organization, [or] activity."[54] Other provisions of section 11165.7(a) that identify mandated reporters use various forms of the word "supervision" in this sense, to denote oversight with the powers of direction and decision, including with respect to minors.[55] Of additional relevance to the context of subdivision (a)(8), to "supervise" children may also mean to watch over them and be temporarily responsible for their care

---

[50] 72 Ops.Cal.Atty.Gen. 216, 216, 226 (1989).

[51] *Ibid.* We also noted that the predecessor to CANRA, the Child Abuse Reporting Law, had explicitly named private school teachers as having a duty to report, and we concluded that the unqualified term "teacher" as adopted in CANRA still encompassed both public and private school teachers. (*Ibid.*)

[52] Stats. 1991, ch. 132 (A.B. 1133), § 1.

[53] *Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 30.

[54] Oxford English Dict. (3d ed. 2012, updated through June 2021) ["supervision"].

[55] See Pen. Code, § 11165.7, subds. (a)(5) (supervisor of child welfare and attendance in a school), (a)(41) (employee or administrator of a postsecondary educational institution who supervises those whose duties bring the administrator or employee into contact with children on a regular basis), (a)(49) (adult person whose duties require direct contact with and supervision of minors in the performance of the minors' duties in the workplace of a business subject to regulation by the Department of Fair Employment and Housing).

or safety.[56]  But supervision of this nature is still generally invested with some measure of direction or control, which helps to ensure the child's health and safety.[57]  The protection of others may also require the supervision and control of children.  For example, a parent or legal guardian has a legal duty to exercise care, supervision, protection, and control over their minor children so that their children do not engage in delinquent acts.[58]

In the *Robbins* case, the resident counselor and the organization operating the shelter seem to have provided both oversight of and care to the girls who were temporarily living there.  In a similar vein, we are informed by some victim service providers that their employees who spend a significant amount of their time staffing residential facilities that house or provide temporary shelter for children are considered by the providers to be mandated reporters.  Assuming that these employees have duties that require supervision of children, we agree that they are mandated reporters under section 11165.7(a)(8). And, as noted above, depending on the type of facility, even employees who do not "supervise" children within the meaning of section 11165.7(a)(8) may be mandated reporters under other subdivisions of CANRA.[59]

Because the term "victim advocate" can encompass a number of different job titles and roles, there will be some individuals who are referred to as victim advocates (or as domestic violence counselors, sexual assault counselors, or human trafficking caseworkers) who do have responsibility for the supervision of children.  We agree that these individuals are mandated reporters.  But we cannot say as a categorical matter that *all* victim advocates are supervisors of children.  An advocate, generally speaking, is a

---

[56] Oxford English Dict. Online (3d ed. 2012, updated through Sept. 2021) ["supervise"].

[57] *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384, citation omitted (absence of adequate supervision poses inherent risk to child's health and safety); Welf. & Inst. Code, § 300, subd. (b)(1) (risk of physical harm to child due to inadequate supervision).

[58] Pen. Code, § 272, subd. (a)(2); *Williams v. Garcetti* (1993) 5 Cal.4th 561, 571 (specifically linking the duties of supervision and control).

[59] See, e.g., Pen. Code, § 11165.7, subds. (a)(7) ("An administrator or employee of a public or private youth center, youth recreation program, or youth organization" is a mandated reporter), (a)(10) ("A licensee, an administrator, or an employee of a licensed community care or child daycare facility" is a mandated reporter); (a)(14) ("An employee of a childcare institution, including, but not limited to, foster parents, group home personnel, and personnel of residential care facilities" is a mandated reporter); Welf. & Inst. Code, § 307.5 (employees of certain programs for abused or neglected children are mandated reporters).

person who pleads for, speaks on behalf of, or supports another, and a victim advocate or child advocate is someone who advises on and protects the rights and needs of that person, and who "may act as his or her representative" in official contexts. [60] The essence of a victim advocate's job, according to advocacy organizations, is to understand and respect the child victims' perspectives, make them aware of their options, and try to restore in them a sense of control and self-determination.[61] These activities are functionally different from exercising powers of decision over, or watching over, a child.

We acknowledge that victim advocates may also sometimes provide supportive services, such as transportation or helping to arrange shelter or housing. But this kind of contact does not necessarily constitute supervision. The advocate may offer the service without imposing direction on the child. Similarly, a taxi driver who picks up and transports an unaccompanied teenager would not be thought of as "supervising" that teenager. In contrast to our conclusion in the 1989 Attorney General Opinion, which relied on the usual and ordinary meaning of the word "teacher," the meaning of "supervision" urged on us here does not comport with our understanding of the usual role of a victim advocate, and is overly broad. In short, to *advocate for* or *advise* is not the same as to *supervise*.

**Other Considerations**

Certain commenters have concluded, as we have, that paid victim advocates are generally not mandated reporters under CANRA, but those commenters have relied on different grounds from those we have advanced. First, some victim service providers assert that designating paid victim advocates as mandated reporters would jeopardize sources of funding for their victim assistance programs, because mandatory reporting will conflict with their advocates' ability to comply with confidentiality requisites upon which the funding is conditioned. While both federal and state grant programs typically make funding contingent on a provider's commitment to rigorously protecting the

---

[60] Oxford English Dict. (3d ed. 2011, updated through June 2021) ["advocate"]. The Oxford English Dictionary refers to child and victim advocates as being "appointed," but while some may be, such as court appointed special advocates, the victim advocates we consider here are not appointed by a governmental authority.

[61] The California Department of Social Services has recently endorsed this approach, which "involves promoting self-determination and essentially assisting youth in gaining, or re-establishing, their own sense of power," in dealing with commercially sexually exploited youth. (Cal. Dept. of Social Services, Child Trafficking Response Unit, All County Information Notice No. I-59-18, Introduction to the Harm Reduction Strategies Series Regarding Commercially Sexually Exploited Children (Sept. 14, 2018) p. 7.)

14

confidentiality of its clients' communications and records, they also permit legally mandated disclosures, including legally mandated reporting of abuse or neglect.[62]  The federal funding regimes we have reviewed thus appear to authorize compliance with state law, but they do not assist in determining what state law is, with respect to mandated reporting.  Hence, while we appreciate the seriousness of concerns about funding, that consideration does not inform our interpretation of the scope of the statute.

Second, some organizations suggest that victim advocates such as domestic violence counselors, human trafficking caseworkers, and sexual assault counselors are exempt from CANRA's mandatory reporting requirement by virtue of the statutory privileges that attach to the relationships those advocates have with victims.  We disagree.  For domestic violence counselors and human trafficking caseworkers, the Evidence Code explicitly states that the applicable privileges do not negate the obligation of a mandated reporter to report known or suspected child abuse.  Evidence Code sections 1037.3 and 1038.3 identically provide: "Nothing in this article shall be construed to limit any obligation to report instances of child abuse as required by Section 11166 of the Penal Code."[63]  The sexual assault counselor privilege does not include this language,[64] but for the following reasons we believe the legislative intent was the same for all three statutes.  Importantly, both the domestic violence counselor-victim privilege and the human trafficking caseworker-victim privilege were expressly modeled on—and designed to be consistent with—the earlier enacted sexual assault counselor-victim

---

[62] See, e.g., 34 U.S.C. § 12291(a)(25), (b)(2)(A)-(C), (E) (Violence Against Women Act); 42 U.S.C. § 10406(c)(5) (Family Violence and Services Act); 28 C.F.R. § 94.115(a), (b), (e) (Victims of Crime Act).  Further analysis of the relationship between CANRA and any particular source of funding for victim service providers is beyond the scope of this Opinion.

[63] Evid. Code, §§ 1037.3 (domestic violence counselor-victim privilege), 1038.3 human trafficking victim-caseworker privilege).

[64] Evid. Code, §§ 1035-1036.2 (sexual assault counselor-victim privilege).

privilege.[65]  Indeed, when legislative committees cataloged the differences between the sexual assault counselor-victim and the domestic violence counselor privileges, they made no reference to the fact that the domestic violence counselor scheme contained the limitation expressed in Evidence Code section 1037.3 while the sexual assault counselor scheme did not contain a like provision.[66] And when the Legislature added Evidence Code section 1038.3 to the human trafficking caseworker-victim privilege article, it characterized that section as a clarification, not a change of law, and declared the human trafficking caseworker-victim privilege to be "consistent with" the sexual assault counselor-victim and domestic violence counselor-victim privileges.[67]

Thus, based on both the statutory language and legislative history of these privileges, we conclude that they do not take precedence over any duty to report known or suspected child abuse under CANRA.  As discussed earlier, a mandated reporter has an affirmative duty to report known or suspected child abuse.  This duty generally prevails even when the reporter otherwise has an ethical or legal obligation to maintain the confidentiality of communications with the person disclosing the abuse.  We have previously concluded, for example, that the duty to report child abuse under the Child Abuse Reporting Law superseded statutory confidentiality provisions of the Lanterman-Petris-Short Act—provisions that, as we noted, were even more protective than any privilege established in the Evidence Code.[68]  Consistent with that view, we conclude that

---

[65] Assem. Com. on Judiciary, Analysis of Sen. Bill. No. 2040 (1985-1986 Reg. Sess.) as amended June 30, 1986, Jul. 8, 1986, p. 4 (domestic violence counselor-victim privilege "substantially similar" to sexual assault counselor-victim privilege); Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2040 (1985-1986 Reg. Sess.) as amended June 30, 1986, Aug. 18, 1986, p. 2 (domestic violence counselor-victim privilege "patterned on" sexual assault counselor-victim privilege); Sen. Com. on Judiciary, Analysis of Assem. Bill No. 22 (2005-2006 Reg. Sess.) as amended June 29, 2005, Jul. 12, 2005, p. 5 (human trafficking caseworker-victim privilege "substantially the same" as sexual assault counselor-victim privilege).

[66] Assem. Com. on Judiciary, Analysis of Sen. Bill. No. 2040 (1985-1986 Reg. Sess.) as amended June 30, 1986, Jul. 8, 1986, p. 4; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2040 (1985-1986 Reg. Sess.) as amended June 30, 1986, Aug. 18, 1986, p. 2.

[67] Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1735 (2019-2020 Reg. Sess.) as introduced Feb. 22, 2019, Mar. 26, 2019, pp. 2, 4, 9, 10.

[68] 65 Ops.Cal.Atty.Gen. 345, 348, 353, 359 (1982); see also 68 Ops.Cal.Atty.Gen. 313, 320-322 (1985) (Reporting requirement of Elder Abuse Reporting Law took precedence over conflicting confidentiality provision in state law ombudsman act).

16

if a victim advocate also belongs to one or more of the mandated reporter categories specified by Penal Code section 11165.7(a), the duty to report takes precedence, even when confidential communications are protected from disclosure in other contexts by a statutory privilege.

We are mindful that a determination as to whether paid victim advocates are, or are not, mandated reporters carries with it significant consequences for the advocates, their clients, and others who seek to assist commercially sexually exploited children and other victims of child abuse. As we have seen, there are differences between a mandated reporter's and a non-mandated reporter's legal exposure both for failing to report known or suspected abuse and for making a report that is known to be false or is made with reckless disregard of the truth.[69] The extent to which paid domestic violence counselors, sexual assault counselors, and human trafficking caseworkers can maintain the confidentiality of their communications with victims, and the disclosures the advocates must make to clients about any limits on confidentiality, will also be different, depending on whether or not the advocates are deemed to be mandated reporters.[70] In addition, the reporting status of victim advocates who collaborate with local government employees to work on multidisciplinary teams dealing with commercially sexually exploited and at-risk youth may affect the advocates' obligations with respect to sharing information with other members of the team.[71] Some commenters suggest, and we agree, that clarity from the Legislature in this area would be welcome.

**CONCLUSION**

In light of our examination of CANRA's current language and structure, we conclude that paid victim advocates working with commercially sexually exploited children, or with children at risk of becoming commercially sexually exploited, are generally not mandated reporters under CANRA. This is not because these advocates are exempted from the reporting requirement by a statutory privilege, but rather because they are not included in the comprehensive list of reporters set forth in Penal Code section

---

[69] Pen. Code, §§ 11166, subd. (c), 11172, subd. (a).

[70] See, e.g., Pen. Code, 679.05, subd. (a); Evid. Code, §§ 1037.8, 1038, subd. (c) (requiring the counselor or caseworker to notify the client of any limitations on the confidentiality of communications between them). A mandated reporter would be required to inform the client that confidential information regarding child abuse would be disclosed to governmental authorities, with or without the client's consent.

[71] See Pen. Code, §§ 11166.4, subds. (a), (b)(1), (e), 11167.5, subd. (b)(4), 13750, subds. (a), (d), (h)-(j), 13752, subds. (a), (c)-(h), 13753, subds. (a), (c)-(h); Welf. & Inst. Code, §§ 16524.7, subds. (a)(1), (a)(4), (d)(2)(A)-(B), 18961.7.

17

11165.7(a).  But paid victim advocates may be mandated reporters in particular circumstances, for instance if they supervise children or have a license that places them in an enumerated reporter category.